HAROLD LICHTEN, *pro hac vice*
(hlichten@llrlaw.com)
JILL KAHN*, pro hac vice*
(jkahn@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:      (617) 994-5800
Facsimile:      (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:      (415) 817-1470

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carlos Conde, Shikwana Jennings, and Lisa Drake, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>2020 Companies LLC, Open Door Marketing, LLC, Barry Millay, and Larry Clarke,<br><br>Defendants. | 4:15-cv-04080<br><br>**PLAINTIFFS' MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES PURSUANT TO 29 U.S.C. § 216(b)**<br><br>CASE FILED: September 8, 2015<br><br>Date:          November 6, 2015<br>Time:          11:00 am<br>Courtroom:   5 |

1

## NOTICE OF MOTION AND MOTION

2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on November 6, 2015, at 11:00 a.m., in Courtroom 5 of this

4

Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Carlos Conde, Shikwana

5

Jennings, and Lisa Drake, individually and on behalf of all others similarly situated, will, and

6

hereby do, move the Court pursuant to 29 U.S.C. § 216(b) for notice to be issued to similarly

7

situated individuals of Plaintiffs' claims against Defendants 2020 Companies LLC, Open Door

8

Marketing, LLC, Barry Millay, and Larry Clarke ("Defendants").

9

    This motion is brought pursuant to the Federal Labor Standards Act, 29 U.S.C. § 201 *et*

10

*seq.* ("FLSA"). The evidence submitted demonstrates that Plaintiffs have satisfied the

11

requirements of 29 U.S.C. § 216(b) to send notice to other individuals who worked for

12

Defendants promoting their clients' cell phones and wireless service plans who may wish to

13

recover their wages in this collective action by notifying them of the pendency of this case.

14

Plaintiffs have attached a copy of the proposed notice as Exhibit A and proposed opt-in form as

15

Exhibit B.  This Motion is based on this Notice of Motion and Motion, the Memorandum of

16

Points and Authorities included herein, the Declarations filed herewith, all pleadings and papers

17

on file in this action, any matters of which the Court may or must take judicial notice, and such

18

additional evidence or argument as may be presented at or prior to the time of the hearing.

19

20

21

22

23

24

25

26

27

28

i

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  FACTS ............................................................................................................4

III. ARGUMENT ...................................................................................................6

     A.     THE COURT MAY ISSUE NOTICE UPON A MODEST FACTUAL
           SHOWING THAT SIMILARLY SITUATED CLASS MEMBERS
           EXIST. ...................................................................................................6

     B.     THE COURT SHOULD AUTHORIZE NOTICE BECAUSE
           PLAINTIFFS HAS IDENTIFIED A REASONABLE BASIS FOR THEIR
           CLAIM THAT SIMILARLY SITUATED CLASS MEMBERS EXIST. ............11

           1.     Defendants 2020 Companies and Open Door Marketing are
                  Employers of Plaintiffs .........................................................13

           2.     Plaintiffs are Not Exempt from the FLSA's Minimum Wage or
                  Overtime   Requirements .......................................................15

     C.     NATURE AND EXTENT OF THE NOTICE......................................................16

           1.     The Court Should Approve Plaintiffs' Proposed Notice Process ..............17

CONCLUSION..............................................................................................................20

## **TABLE OF AUTHORITIES**

# **Cases**

Adams v. Inter-Con Sec. Sys., Inc.,
  242 F.R.D. 530 (N.D. Cal. 2007) ................................................................. 7, 17

Bartels v. Birmingham
  332 U.S. 126, 130 (1947) .............................................................................. 14

Benedict v. Hewlett-Packard Co.,
  2014 WL 587135 (N.D. Cal. Feb. 13, 2014) .............................. 7, 9, 17, 18

Bogor v. Am. Pony Exp., Inc.,
  2010 WL 1962465 (D. Ariz. May 17, 2010) ................................................ 12

Boucher v. Shaw,
  572 F.3d 1087 (9th Cir. 2009) ........................................................................ 1

Carrillo v. Schneider Logistics, Inc.,
  2012 WL 556309 (C.D.Cal. Jan. 31, 2012) ................................................. 19

Church v. Consol. Freightways, Inc.,
  137 F.R.D. 294 (N.D.Cal. Apr. 12, 1991) ..................................................... 2

Davis v. Westgate Planet Hollywood Las Vegas, LLC,
  2009 WL 102735 (D. Nev. Jan. 12, 2009) .................................................... 11

Deatrick v. Securitas Sec. Servs. USA, Inc.,
  2014 WL 5358723 (N.D. Cal. Oct. 20, 2014) ........................................ 18, 20

Dixon v. Zabka
  2013 WL 2391473 (D. Conn. May 23, 2013) ............................................... 13

Dixon v. Zabka
  2014 WL 6084351 (D. Conn. Nov. 13, 2014) .............................................. 13

Dixon v. Zabka
  Dkt. 94, 3:11-cv-00982 (D. Conn. Mar. 12, 2012) ...................................... 12

Escobar v. Whiteside Constr. Corp.,
  C 08–01120, 2008 WL 3915715 (N.D. Cal. Aug. 21, 2008) ........................ 10

Flores v. Velocity Exp., Inc.,
  2013 WL 2468362 (N.D. Cal. June 7, 2013) ............................... 2, 9, 11, 17

Gerlach v. Wells Fargo & Co.,
    2006 WL 824652 (N.D. Cal. Mar.28, 2006)............................................................ 2

Gilbert v. Citigroup, Inc.,
    08–0385, 2009 WL 424320 (N.D. Cal. Feb. 18, 2009) ......................................... 10

Goldberg v. Whitaker House Cooperative
    366 U.S. 28 (1961)................................................................................................. 14

Guifu Li v. A Perfect Franchise, Inc.,
    2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) .................................................... 3, 12

Guy v. Casal Inst. of Nev., LLC,
    2014 WL 1899006 (D.Nev. May 12, 2014)............................................................ 19

Harris v. Vector Mktg. Corp.,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ........................................................... passim

Hernandez v. NGM Mgmt. Grp. LLC,
    2013 WL 5303766 (S.D.N.Y. Sept. 20, 2013)...................................................... 18

Hoffmann–La Roche Inc. v. Sperling,
    493 U.S. 165 (1989)..................................................................... 7, 8, 17, 18

Hurt v. Commerce Energy
    2013 WL 4427257 (N.D. Ohio Aug. 15, 2013) .................................................... 16

Kress v. PricewaterhouseCoopers, LLP,
    263 F.R.D. 623 (E.D. Cal. 2009) ............................................................................ 8

Labrie v. UPS Supply Chain Solutions, Inc.,
    2009 WL 723599 (N.D. Cal. Mar. 18, 2009)................................................. passim

Leuthold v. Destination Am., Inc.,
    224 F.R.D. 462 (N.D. Cal. 2004)............................................................... 2, 7, 10

Lewis v. Wells Fargo Co.,
    669 F. Supp. 2d 1124 (N.D. Cal. 2009) .................................................................. 2

Morton v. Valley Farm Transport, Inc.,
    2007 WL 1113999 (N.D.Cal. Apr. 13, 2007) ......................................................... 7

Mowdy v. Beneto Bulk Transp.
    2008 WL 901546 (N.D. Cal. Mar. 31, 2008)........................................................ 13

Nash v. CVS Caremark Corp.,
    683 F. Supp. 2d 195 (D.R.I. 2010) ................................................................. 4, 17

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Otey v. CrowdFlower, Inc.,
  2013 WL 4552493 (N.D. Cal. Aug. 27, 2013) ...................................................... 10, 17, 18, 19

Real v. Driscoll Strawberry Associates, Inc.,
  603 F.2d 748 (9th Cir. 1979) ................................................................................. 14

Rutherford Food Corp. v. McComb
  331 U.S. 722 (1947) ............................................................................................... 14

Sanchez v. Sephora USA, Inc.,
  2012 WL 2945753 (N.D. Cal. July 18, 2012) ....................................................... 19

Scantland v. Jeffry Knight, Inc.,
  Civ. A. No. 8:09-cv-1958 (M.D. Fl. Sept. 30, 2010) ............................................ 12

Scovil v. FedEx Ground Package Sys., Inc.,
  811 F. Supp. 2d 516 (D. Me. 2011) ....................................................................... 12

Stanfield v. First NLC Financial Serv., LLC,
  2006 WL 3190527 (N.D.Cal. Nov. 1, 2006) .......................................................... 8

Syed v. M-I, L.L.C.,
  2014 WL 6685966 (E.D. Cal. Nov. 26, 2014) ....................................................... 10, 18, 19

Trinidad v. Pret A Manger (USA) Ltd.,
  962 F. Supp. 2d 545 (S.D.N.Y. 2013) ................................................................... 18

United States v. Silk
  331 U.S. 704 (1947) ............................................................................................... 14

Valerio v. Putnam Assocs Inc.,
  173 F.3d 35 (1st Cir. 1999) .................................................................................... 17

Vasquez v. HSBC Finance Corp.
  266 F.R.D. 424 (N.D. Cal. 2010) .......................................................................... 13

Villa v. United Site Services of California, Inc.,
  5:12–CV–00318, 2012 WL 5503550 (N.D. Cal. Nov. 30, 2012) ........................... 2

Villarreal v. Caremark LLC,
  2014 WL 7184014 (D. Ariz. Dec. 17, 2014) ........................................................ 1, 8

Whitehorn v. Wolfgang's Steakhouse, Inc.,
  767 F. Supp. 2d 445 (S.D.N.Y. 2011) ................................................................... 19

Wilkins v. Just Energy,
  13 C 5806, 2015 WL 1234738 (N.D. Ill. Mar. 13, 2015) ...................................... 16

Wren v. Rgis Inventory Specialists,
  2007 WL 4532218 (N.D. Cal. Dec. 19, 2007) ........................................................... 19

Zaborowski v. MHN Gov't Servs., Inc.,
  2013 WL 1787154 (N.D. Cal. Apr. 25, 2013) ................................................. 2, 9, 12

## Statutes

29 U.S.C. § 216(b) ...................................................................................... passim

29 U.S.C. § 255(a) ............................................................................................. 17

29 U.S.C. § 257 ................................................................................................... 4

29 U.S.C. §207(i) .............................................................................................. 15

Cal. Lab. Code § 1194 ......................................................................................... 1

Cal. Lab. Code § 1197 ......................................................................................... 1

Cal. Lab. Code § 226(a) ....................................................................................... 1

Cal. Labor Code § 2802 ....................................................................................... 1

Fair Labor Standards Act ("FLSA"),
  29 U.S.C. §§ 206 and 207 ...................................................................... passim

## Other Authorities

Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law
  Enforcement in the Federal Courts,
  29 Berkeley J. Emp. & Lab. L. 269 (2008) ...........................................................19

## Rules

Fed. R. Civ. P. 23 ................................................................................................ 2

## I.   INTRODUCTION

Plaintiffs Carlos Conde, Shikwana Jennings, and Lisa Drake have brought this collective action seeking to recover unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 207.[1]  Plaintiffs contend that they and their fellow employees who promote cell phones and wireless service plans have been misclassified as independent contractors, and that Defendants 2020 Companies[2] and Open Door Marketing have not paid these employees overtime for all hours worked beyond forty (40) in a given week, and have not paid them at least the federal minimum wage for all weeks worked. Plaintiffs contend that as a matter of economic reality, they and other employees who promote cell phones and wireless service plans are not in business for themselves, but instead are economically dependent on Defendants, such that they should be considered employees of Defendants.  Plaintiffs now seek, pursuant to 29 U.S.C. § 216(b), permission to issue notice to all individuals who worked for Defendants promoting their clients' cell phones and wireless service plans during the last three years.

The standard for obtaining notice under § 216(b) is very lenient.  Consistent with "the FLSA's broad remedial purposes," Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009), Plaintiffs need only show that the workers they seek to notify were subject to a single common policy, or plan which they claim to violate the law. Villarreal v. Caremark LLC, CV–14–00652, 2014 WL 7184014, *2 (D. Ariz. Dec. 17, 2014). "Because the court generally has a limited

---

[1] Plaintiffs also bring minimum wage and overtime claims under Cal. Lab. Code §§ 1194 and 1197; Cal. Lab. Code § 226(a) for failure to provide itemized wage statements; and Cal. Labor Code § 2802 for unlawful expense charges.

[2] This motion will refer to Defendant 20/20 as "2020 Companies," since this was the name of the company at the time Plaintiffs worked there.  Plaintiffs will file an amended complaint to reflect the current name of the Defendant, 20/20 Communications, Inc.

amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification." Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004).  This standard is far more lenient than the standard for obtaining class certification under Rule 23 of the Federal Rules of Civil Procedure: Plaintiffs need not prove that common questions will predominate; that a class is superior; or that the representative plaintiffs' claims are typical. Flores v. Velocity Exp., Inc., 12–cv–05790, 2013 WL 2468362, *7 (N.D. Cal. June 7, 2013).  Rather, they need only identify a common factual nexus between their situation and that of the individuals they seek to notify.[3]  Under this standard, courts have routinely granted notice to workers who fall under the same job category and, have been uniformly classified as independent contractors. See, e.g., Flores, 2013 WL 2468362 at *8 (granting conditional certification under the FLSA to courier drivers alleging they were misclassified as independent contractors); Zaborowski v. MHN Gov't Servs., Inc., C 12–05109, 2013 WL 1787154, *1 (N.D. Cal. Apr. 25, 2013) (granting conditional certification to counselors alleging they were misclassified as independent contractors under the FLSA); Guifu

---

[3]     Rule 23 certification is more stringent in its requirements than § 216(b).  See Lewis v. Wells Fargo Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) ("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23"); Flores, 2013 WL 2468362 at *8 ("[C]ourts have repeatedly rejected attempts like [defendant's] to equate FLSA class actions and Rule 23 class actions because 'Congress chose not to apply the Rule 23 standards to collective actions under the ADEA and FLSA, and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 would effectively ignore Congress' directive'") (quoting Gerlach v. Wells Fargo & Co., C 05–0585, 2006 WL 824652, *3 (N.D. Cal. Mar.28, 2006)); see also Villa v. United Site Services of California, Inc., 5:12–CV–00318, 2012 WL 5503550, *14 (N.D. Cal. Nov. 30, 2012) ("[A] collective action does not require a showing that common claims predominate"); Church v. Consol. Freightways, Inc., 137 F.R.D. 294, 305 (N.D. Cal. Apr. 12, 1991).

2

1  Li v. A Perfect Franchise, Inc., 5:10–CV–01189, 2011 WL 4635198, *6 (N.D. Cal. Oct. 5, 2011)

2  (approving conditional certification and notice for allegedly misclassified massage therapists);

3  Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 840-41 (N.D. Cal. 2010) (approving

4  conditional certification and notice for sales representatives alleging they were misclassified as

5  independent contractors); Labrie v. UPS Supply Chain Solutions, Inc., C08–3182, 2009 WL

6  723599, *6 (N.D. Cal. Mar. 18, 2009).

7           Here, all individuals who worked for Defendants promoting their clients' cell phones and

8  wireless service plans across the country are similarly situated.  Plaintiffs challenge a common

9  policy whereby Defendant does not pay these workers minimum wage or overtime pay for hours

10  worked beyond forty in a work week.  As discussed in more detail below, although Defendants

11  train and closely supervise the individuals who promote their clients' cell phones and wireless

12  service plans, rely upon them to perform the core services of their business, and discipline and

13  fire employees who fail to measure up to their standards, Defendants do not recognize these

14  individuals as employees. Moreover, in violation of the FLSA, workers promoting cell phones

15  and wireless service plans often do not receive minimum wage for all hours worked, and are

16  never paid overtime for hours worked beyond forty in week. In fact, all individuals who work for

17  defendants promoting cell phones and wireless service plans receive compensation solely on a

18  commission basis, [4] earning $4-$10 for each qualified customer they "sign up" for a cell phone

19  or a data plan.  Defendants subject all workers promoting cell phones and wireless service plans

20  to the same standards and policies, with regard to job performance and pay, no matter where in

21

22  _____

23

24      [4] Although these workers receive commission-based pay, they are not subject to the
        FLSA exemption for outside sales, as shown below.

25

26

27                                                    3

the country they are located. Indeed, in support of this motion, Plaintiffs have attached declarations (and have filed consent forms already) from workers from Nevada and California.

It is vital that notice be issued promptly to preserve the rights of these workers.  Unlike in a class action brought under Rule 23, the statute of limitations in a collective action brought under the FLSA is not tolled with respect to unnamed collective action members merely by filing a complaint.  Rather, each member must affirmatively toll the statute of limitations by "opting into" the lawsuit. <u>Nash v. CVS Caremark Corp.</u>, 683 F. Supp. 2d 195, 200 (D.R.I. 2010); <u>see also</u> 29 U.S.C. § 257 (The "statute of limitations [of] such action shall be considered to have been commenced as to him when, and only when, his written consent to become a party plaintiff to the action is filed in the court in which the action was brought").  Before this case goes any further, workers promoting cell phones and wireless service plans should be notified of their right to opt in to this case because the statute of limitations is continuing to run for them on their claims under the FLSA.  The only way to preserve those employees' claims is through notice informing them of their rights and affording them the opportunity to join the suit.

## II.    FACTS

Defendant 2020 Companies is a Texas corporation.  Ex. E (Drake Decl.) at ¶ 3; Ex. D (Jennings Decl.) at ¶ 3.  2020 Companies spun off a subsidiary, Defendant Open Door Marketing, around September or October of 2014.  Ex. E (Drake Decl.) at ¶ 4.  Some Plaintiffs who had begun working for 2020 Companies in the first part of 2014 came under the umbrella of Open Door Marketing, an Alabama corporation.  <u>Id</u>; Ex. F (Webb Decl.) at ¶ 3.  2020 Companies, and its subsidiary, Open Door Marketing, are marketing companies which work with various clients, such as Assurance Wireless and Access wireless, to promote their products and services.  Ex. E (Drake Decl.) at ¶ 3; Ex. D (Jennings Decl.) at ¶ 3; Ex. F (Webb Decl.) at ¶ 3. Plaintiffs, whose work consists primarily of promoting these products and services, are therefore an integral part of Defendants' business.

4

Workers recruited by Defendants go through a short training prior to beginning work. Ex. C (Conde Decl.) at ¶ 6; Ex. D (Jennings Decl.) at ¶ 8; Ex. E (Drake Decl.) at ¶ 10.  Their work day normally begins at 8 or 9 in the morning, when they come to a morning meeting or directly to their pre-designated field assignment, where they snap a picture of their location as proof.  Ex. C (Conde Decl.) at ¶¶ 8- 9; Ex. D (Jennings Decl.) at ¶¶ 10-11; Ex. E (Drake Decl.) at ¶ 10, 12-13.  Next, workers approach prospective customers in an attempt to sign them up for Assurance Wireless or Access Wireless phones.  Ex. C (Conde Decl.) at ¶ 7; Ex. D (Jennings Decl.) at ¶ 9; Ex. E (Drake Decl.) at ¶ 11.  The workers are expected to make a set number of sign-ups each day, and are told that they can be fired for not reaching the goal.  Ex. C (Conde Decl.) at ¶ 13; Ex. D (Jennings Decl.) at ¶ 16; Ex. E (Drake Decl.) at ¶ 18; Exhibit F (Webb Decl.) at ¶ 16. In reality, most workers never reach the high goals set by the company.  Ex. C (Conde Decl.) at ¶ 14.  Workers are required to be at their designated location until 5 or 6 PM. Nonetheless, workers often stay out at their designated location until they have made the required number of sign-ups (Ex. D (Jennings Decl.) at ¶ 12; Ex. F (Webb Decl.) at ¶ 12).  At times therefore, they work until 8, 9, or even 10 at night. Ex. D (Jennings Decl.) at ¶ 12.  At the end of each day, workers must report their number of sign-ups back to the office.  Ex. C (Conde Decl.) at ¶ 13; Ex. D (Jennings Decl.) at ¶ 16; Ex. E (Drake Decl.) at ¶ 12; Exhibit F (Webb Decl.) at ¶ 7. Workers are required to be at their assigned locations signing up customers six days a week, Monday through Saturday.  Ex. C (Conde Decl.) at ¶ 9; Ex. D (Jennings Decl.) at ¶ 6; Ex. E (Drake Decl.) at ¶ 8; Exhibit F (Webb Decl.) at ¶ 10.  Some also work on Sundays to meet the target number of sign-ups.  Ex. D (Jennings Decl.) at ¶ 12.

Defendants monitor the performance of workers promoting cell phones and wireless service plans, including the location at which they market the phones, the daily number of "sign-ups" they collect, and the hours during which they are on site.  Ex. C (Conde Decl.) at ¶¶ 8- 9, 13; Ex. D (Jennings Decl.) at ¶¶ 10-11, 16; Ex. E (Drake Decl.) at ¶ 10, 12-13; Exhibit F (Webb Decl.) at ¶ 7.  If these workers' performance does not meet Defendants' standards, the workers

5

may receive warnings and are subject to termination. Ex. C (Conde Decl.) at ¶ 13; Ex. D (Jennings Decl.) at ¶ 16; Ex. E (Drake Decl.) at ¶ 18; Exhibit F (Webb Decl.) at ¶ 16. Thus, Defendants retain a high level of control over workers promoting cell phones and wireless service plans, which is inconsistent with an independent contractor relationship.  Nonetheless, Defendants classify these workers as independent contractors. Ex. C (Conde Decl.) at ¶ 25; Ex. D (Jennings Decl.) at ¶ 5; Ex. E (Drake Decl.) at ¶7; Ex. F (Webb Decl.) at ¶ 6.

Plaintiffs have worked for Defendants under different titles at different times, as outreach agents, and general managers.  Ex. C (Conde Decl.) at ¶¶ 4, 21; Ex. D (Jennings Decl.) at ¶¶ 2, 18.  Regardless of the title, however, Plaintiffs got paid on a commission-only basis.  Ex. C (Conde Decl.) at ¶¶ 15, 21-24; Ex. D (Jennings Decl.) at ¶¶ 17; Ex. E (Drake Decl.) at ¶ 19; Exhibit F (Webb Decl.) at ¶ 17.  The commissions they received were tied to sign-ups of qualified customers for Assurance Wireless and Access Wireless cell phones.  Id.  As such, Plaintiffs were not guaranteed a minimum level of income.  In fact, on many occasions, Plaintiffs did not receive minimum wage for a given week.  Ex. C (Conde Decl.) at ¶¶ 16 Ex. D (Jennings Decl.) at ¶ 18; Ex. E (Drake Decl.) at ¶ 20; Exhibit F (Webb Decl.) at ¶ 18.   Plaintiffs were also not paid time-and-a-half for hours worked in excess of 40 a week, even though they routinely worked 60 hours a week.  Ex. C (Conde Decl.) at ¶¶ 10, 17; Ex. D (Jennings Decl.) at ¶ 14; Ex. E (Drake Decl.) at ¶ 20; Exhibit F (Webb Decl.) at ¶ 18.   In addition, Plaintiffs were often charged for use of the tablets they employed to sign up customers and logo shirts they wore to work.  Ex. C (Conde Decl.) at ¶ 12; Ex. D (Jennings Decl.) at ¶ 15; Ex. E (Drake Decl.) at ¶ 20; Exhibit F (Webb Decl.) at ¶¶ 14-15.

## III.   ARGUMENT

### A.  THE COURT MAY ISSUE NOTICE UPON A MODEST FACTUAL SHOWING THAT SIMILARLY SITUATED CLASS MEMBERS EXIST.

The FLSA allows workers to bring an action either on an individual basis or on a collective basis for himself or herself "and other employees similarly situated."  29 U.S.C. §

6

216(b).  Here, Plaintiffs seek to bring this case on a collective basis with respect to their claims under the FLSA.  Similarly situated individuals may not be a party to a collective action under the FLSA unless they affirmatively opt in to the case. Id.  To provide those individuals with an opportunity to opt in, "[t]he court may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit." Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  Notice is intended to issue early in the life of a collective action in order to establish the contours of the action and to further the broad remedial purpose of the FLSA.  See Hoffman-LaRoche, 493 U.S. at 171 (discussing importance of early notice in collective actions in order to "ascertain[] the contours of the action at the outset").

Courts in this Circuit have adopted a two-step approach in determining whether plaintiffs are similarly situated for purposes of class certification under 216(b). Adams, 242 F.R.D. at 536. "[T]he court must first decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D. Cal. 2004). The usual result under this lenient standard is conditional class certification. Adams, 242 F.R.D. at 536. "In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried and the court may determine whether to "decertify the class and dismiss opt-in plaintiffs without prejudice." Id. "Plaintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." Benedict v. Hewlett-Packard Co., 13–CV–00119, 2014 WL 587135, *5 (N.D. Cal. Feb. 13, 2014).  Indeed, "[a]ll that need be shown [in the first stage is] that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." Id. (internal quotation omitted); see also Morton v. Valley Farm Transport, Inc., C 06-2933, 2007 WL 1113999, *2 (N.D. Cal. Apr. 13, 2007) (describing burden

7

as "not heavy" and requiring only a "reasonable basis for their claim of class-wide" conduct) (internal quotation marks and citation omitted); Stanfield v. First NLC Financial Serv., LLC, C 06-3892, 2006 WL 3190527, *2 (N.D. Cal. Nov. 1, 2006) (holding that the plaintiffs simply "must be generally comparable to those they seek to represent").  Here, there can be no doubt that this lenient standard has been met.

Furthermore, courts in this Circuit have consistently recognized the importance of issuing notice to similarly situated workers early in the litigation.  Courts have acknowledged that "[e]arly certification in an FLSA [case] is part of the development of the factual record," and have noted that bypassing or delaying the notice stage is prejudicial to workers who might be deprived "of a meaningful opportunity to participate." Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 629 (E.D. Cal. 2009).  By contrast, early notice "risks little harm to defendant, who will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired." Id.; see also Hoffman-LaRoche, 493 U.S. at 171 (noting that early notice in collective actions helps to "ascertain[] the contours of the action at the outset").  Thus, "[i]n determining whether plaintiffs have met th[e] standard [for issuing notice] courts need not consider evidence provided by defendants." Id. at 628. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." Villarreal, 2014 WL 7184014 at *1.  Thus, because Plaintiffs have made the modest showing required by the FLSA, the Court should order that notice be issued at once.

Employers often offer a litany of arguments in an effort to complicate the lenient standard for conditional certification.  For example, employers facing conditional certification of misclassification claims have argued that "the determination of whether an individual is properly classified as an independent contractor is an inherently fact-specific inquiry that is not prone to group adjudication." Labrie, 2009 WL 723599 at *6.  However, courts have rightly rejected this contention (as evidenced by the numerous cases cited above, certifying collective actions on this

8

very question).  Indeed, in <u>Labrie</u>, the Court noted that this argument "raise[s] issues primarily going to the merits," and more appropriately addressed at a later stage in the litigation and that where "[p]laintiffs have made substantial allegations that potential plaintiffs were subject to a single illegal policy, plan or decision" of misclassification, their burden has been met. <u>See also</u> <u>Harris</u>, 716 F. Supp. 2d at 841 ("To the extent there may be some individualized inquiries about the level of control actually exercised … several courts have indicated that individualized inquiries such as this are better to address at the second stage of certification rather than the first"); <u>Flores</u>, 2013 WL 2468362 at *7 (rejecting defendant's "argument, that the misclassification of workers as independent contractors involves a fact-intensive inquiry that does not lend itself to collective treatment," because "[t]he need for such an inquiry has not prevented courts, … from routinely certifying FLSA cases based on allegations and affidavits similar to those presented here"); <u>Benedict</u>, 2014 WL 587135 at *11 (disregarding defendant's argument that "the inquiry whether each putative class member is misclassified as exempt will be dominated by individualized factual inquiries, . . . which courts in this Circuit have consistently rejected in misclassification cases"); <u>Zaborowski</u>, 2013 WL 1787154 at *3 (rejecting defendant's argument that there are disputes regarding the level of defendant's "control over the [plaintiffs]" and "[that] the different locations, types of clients, and types of assignments [] varied amongst the [plaintiffs]" where all the plaintiffs "have the same job title; perform substantially similar activities; are governed by the same [] Agreement, … and, most importantly, are all considered exempt employees that MHN does not pay for overtime").  In light of the lenient standard for conditional certification, the Court should authorize notice to issue based on the evidence submitted by Plaintiffs of Defendants' uniform policy of not paying Plaintiffs minimum wage and overtime compensation and the thorough control Defendants exercise over individuals promoting phones and service plans, including the discretion Defendants retain for firing individuals who do not meet the company's targets for sign-ups.

9

1     Relatedly, courts do not require extensive proof in ruling on motions for conditional

2   certification.  Harris, 716 F. Supp. 2d at 838 "A plaintiff need not submit a large number of

3   declarations or affidavits to make the requisite factual showing. A handful of declarations may

4   suffice."  See Gilbert v. Citigroup, Inc., 08–0385, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18,

5   2009) (finding lenient standard met based on declarations from plaintiff and four other

6   individuals); Escobar v. Whiteside Constr. Corp., C 08–01120, 2008 WL 3915715 (N.D. Cal.

7   Aug. 21, 2008) (finding lenient standard met based on declarations from three plaintiffs);

8   Leuthold, 224 F.R.D. at 468–69 (finding lenient standard met based on affidavits from three

9   proposed lead plaintiffs). The declarations offered by Plaintiffs are a sufficient basis upon which

10  to grant conditional certification. [5]

11    Employers also commonly argue that an alleged lack of interest by other prospective

12  collective action members precludes conditional certification and notice, but this argument puts

13  the cart before the horse.  As courts in this Circuit have made clear, a showing of purported

14  "interest" among collective action members is wholly irrelevant to the question of whether notice

15  should issue.  See, e.g., Otey v. CrowdFlower, Inc., 12–cv–05524, 2013 WL 4552493, *4 (N.D.

16  Cal. Aug. 27, 2013) ("Courts in this circuit routinely hold that, at the notice stage, a failure to

17  show that putative class members have expressed a desire to opt into the action does not preclude

18  conditional certification where the plaintiff makes a threshold showing that the putative class

19  members are similarly situated"); Harris, 716 F. Supp. 2d at 838 ("The fact that other potential

_____

22  [5]    Employers sometimes argue that declarations like the ones submitted here are not

23  competent evidence, but the courts have rejected this argument. See, e.g., Syed v. M-I, L.L.C.,
    1:12–CV–1718, 2014 WL 6685966, *6 (E.D. Cal. Nov. 26, 2014) ("[C]ourts have held that on a

24  motion for class certification, the evidentiary rules are not strictly applied and courts can
    consider evidence that may not be admissible at trial"); Labrie, 2009 WL 723599 at *7 (rejecting

25  the argument "that plaintiffs' declarations are not competent evidence").

PLAINTIFFS' MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES
PURSUANT TO 29 U.S.C. § 216(B)

1    class members have not affirmatively stated a desire to opt in does not preclude conditional

2    certification"); <u>Davis v. Westgate Planet Hollywood Las Vegas, LLC</u>, 2:08–cv–00722, 2009 WL

3    102735, *12 (D. Nev. Jan. 12, 2009) (noting that "courts—including the Ninth Circuit—have

4    recognized that requiring named plaintiffs to proffer evidence that others desire to opt in to a §

5    216(b) conditional class before sending notice to potential class members puts the named

6    plaintiff is the 'ultimate chicken and egg dilemma'" and finding that "failure to demonstrate that

7    there are other similarly situated employees who wish to opt in to this FLSA action for overtime

8    wages does not, of itself, constitute sufficient grounds to defeat the motion").  Even if a showing

9    of interest is required, however, the four opt-ins already filed in this case constitute such a

10   showing.

**B.   THE COURT SHOULD AUTHORIZE NOTICE BECAUSE PLAINTIFFS HAS IDENTIFIED A REASONABLE BASIS FOR THEIR CLAIM THAT SIMILARLY SITUATED CLASS MEMBERS EXIST.**

13          The standard for conditional certification and notice is more than met in this case.  The

14   record here provides ample support for the proposition that Defendants employ individuals who

15   promote cell phones and wireless service plans whom they classify as independent contractors.

16   Those workers perform the same duties for the company (marketing cell phones and service

17   plans at a predetermined location), are subject to largely the same requirements and rules (report

18   to the job site at a specific time; meet set quotas for sign-ups, and have suffered the same

19   damages as a result of their misclassification (earnings below minimum wage in some weeks;

20   unpaid overtime).  Simply put, the workers have suffered the same damages stemming from the

21   Defendants' illegal policy of not paying them minimum wage and overtime.  Such a showing

22   well satisfies the low threshold for notice under § 216(b).

23          Courts in this Circuit and elsewhere have not hesitated to order notice in cases brought by

24   employees challenging their status as independent contractors and their resulting failure to

25   receive minimum wage or overtime.  See <u>Flores</u>, 2013 WL 2468362 at *6-7 (granting

26

27                                                   11

conditional certification "on behalf of a proposed class of delivery drivers employed by Velocity who Plaintiffs allege were misclassified as independent contractors" and suffered wage violations as a result); <u>Zaborowski</u>, 2013 WL 1787154 at *1 (granting conditional certification to counselors "alleging that [defendant] misclassified them as independent contractors, [and as] exempt from overtime payment" under the FLSA); <u>Guifu Li</u>, 2011 WL 4635198 at *6 (approving conditional certification and notice for allegedly misclassified massage therapists); <u>Harris</u>, 716 F. Supp. 2d at 840-41 (approving conditional certification and notice for sales representatives alleging they were misclassified as independent contractors); <u>Labrie</u>, 2009 WL 723599 at *6 (approving conditional certification and notice for similarly situated delivery drivers alleging "that [defendant] has misclassified plaintiffs as 'independent contractors' and, in doing so, has unlawfully deprived plaintiffs of the rights and protections guaranteed by the FLSA"); <u>Scovil v. FedEx Ground Package Sys., Inc.</u>, 811 F. Supp. 2d 516, 520 (D. Me. 2011) (approving conditional certification of collective action of misclassified FedEx drivers); <u>Scantland v. Jeffry Knight, Inc.</u>, Civ. A. No. 8:09-cv-1958 (M.D. Fl. Sept. 30, 2010) (granting conditional certification to cable installers alleging they were misclassified as independent contractors); <u>Bogor v. Am. Pony Exp., Inc.</u>, 09–2260, 2010 WL 1962465, *2 (D. Ariz. May 17, 2010) (approving notice in FLSA collective action where defendant allegedly "misclassified its Airport Drivers as independent contractors and failed to pay them the wages owed under the FLSA").

Courts have also granted conditional certification in cases involving door-to-door marketing. Thus, for instance, in <u>Dixon v. Zabka</u>, the court conditionally certified a class of individuals who marketed Kirby vacuum cleaners door-to-door. Dkt. 94, 3:11-cv-00982 (D. Conn. Mar. 12, 2012). As the court noted during the hearing on the motion for conditional certification, these individuals were paid on commission, with the promise of $500 for 15 demonstrations. <u>Id.</u> at pp. 24-25, 33. The action included, among other claims, a claim for misclassification. <u>Dixon v. Zabka</u>, 3:11–cv–982, 2013 WL 2391473, *1 (D. Conn. May 23,

12

2013).  As the court later noted, **"**numerous Kirby policies . . . governed dealers' day-to-day working conditions, including attending mandatory training for which they were not paid, following Kirby's 10–step demonstration sequence, making sales through in-home demonstrations only, using or discussing only Kirby products during demonstrations, and selling only Kirby products." Dixon v. Zabka, 3:11–cv–982, 2014 WL 6084351, *6 (D. Conn. Nov. 13, 2014) (denying Defendant's motion for summary judgment as to independent contractor status). Conditional certification would be similarly appropriate in this case, where Plaintiffs have demonstrated that they had to report to a designated location at 8 or 9 in the morning, six days a week, had to send a picture of the location to their supervisor, had to report the number of people they had signed up to their supervisor every day, and were expected to meet set quotas for sign ups every day or risk termination.

### 1. Defendants 2020 Companies and Open Door Marketing are Employers of Plaintiffs

Defendants are likely to argue that Plaintiffs are properly classified as independent contractors.[6]  However, this argument is not properly raised at the conditional certification stage. See, e.g., Vasquez v. HSBC Finance Corp., 266 F.R.D. 424, 432 (N.D. Cal. 2010) ("the Court notes that it should not consider the merits of Plaintiffs' claims at the conditional certification stage."); Mowdy v. Beneto Bulk Transp., 06-05682, 2008 WL 901546, *3 (N.D. Cal. Mar. 31, 2008) (addressing merits of the case "is not proper at this first stage of conditional certification"). Furthermore, Plaintiffs are undoubtedly employees of 2020 Companies and Open Door Marketing.  "Courts have adopted an expansive interpretation of the definitions of "employer"

---

[6] As explained more fully below, Defendants will attempt to argue that Plaintiffs are subject to the outside sales exemption; however, this contention is not a basis for opposing a motion for conditional certification and is without merit.

PLAINTIFFS' MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES
PURSUANT TO 29 U.S.C. § 216(B)

CASE NO. 4:15-cv-04080

and "employee" under the FLSA, in order to effectuate the broad remedial purposes of the Act." Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir. 1979).

The Ninth Circuit follows the economic realities test for determining employment status for purposes of the FLSA.  Id. (citing Bartels v. Birmingham, 332 U.S. 126, 130 (1947); Goldberg v. Whitaker House Cooperative, 366 U.S. 28, 33 (1961)).  The factors courts typically look at to determine whether an individual is an independent contractor or an employee are as follows:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

Real, 603 F.2d at 754; see Bartels, 332 U.S. 126; United States v. Silk, 331 U.S. 704, 716 (1947); and Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947). No one of these factors is determinative, since "the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."  Rutherford Food, 331 U.S. at 730.  Application of these factors to the relationship between Plaintiffs, 2020 Companies and Open Door Marketing makes clear that Plaintiffs are, in fact, jointly employed by 2020 Companies and Open Door Marketing.

2020 Companies and Open Door Marketing closely monitor and control all aspects Plaintiffs' work, instructing them on what time to arrive, how many hours to work each day and where to make sales.  Plaintiffs are dispatched to a set location, where they remain all day in an

14

attempt to sign up prospective customers for phones and service plans.  Even when workers do get "promoted" to the position of manager or general manager, they are still paid on commission, and very closely directed by 2020 Companies and Open Door Marketing, facing intense pressure to generate more sign-ups.  Plaintiffs do not invest in equipment or materials; instead they are provided with a brief online training and a tablet by Defendants.  No sales experience is required to work at 2020 Companies, and workers are hired after a brief interview process. Plaintiffs are part of the business of 2020 Companies and Open Door Marketing, since these companies solicit marketing contracts from clients such as Access Wireless and Assurance Wireless, and then deputize Plaintiffs to promote these clients' phones and services on the street level.  Plaintiffs are therefore employed by 2020 Companies and Open Door Marketing.

### 2. Plaintiffs are Not Exempt from the FLSA's Minimum Wage or Overtime Requirements

Defendants may also argue that Plaintiffs are subject to the outside sales exemption and/or the exemption for retail and service employees.  Such an assertion at the conditional certification stage would be both premature and misplaced.  The exemption for retail and service employees does not apply to Plaintiffs because it requires that employees be compensated at 1and 1/2 times the applicable minimum hourly rate.  29 U.S.C. §207(i).  In the present case, Plaintiffs are not always paid minimum wage, and generally make much less than the amount of money required to place Defendants within the safe harbor of § 207(i).  Similarly, the exemption for outside sales does not apply to Plaintiffs since they are closely controlled by Defendants and often make below minimum wage.  Courts have held that in almost identical situations, workers providing door-to-door sales who were instructed as to the exact locations and hours during which they must sell, and who typically earned less than the minimum wage, were employees. For example, in <u>Wilkins v. Just Energy</u>, a class action brought by a door-to-door natural energy salesperson, the court denied defendant's motion for summary judgment based on the outside sales exemption as applied to the Illinois Minimum Wage Law.  13 C 5806, 2015 WL 1234738

15

(N.D. Ill. Mar. 13, 2015).  The named plaintiff in <u>Wilkins</u>, much like Plaintiffs in this case, had no prior sales experience, participated in a two-day training session as well as subsequent field training, was instructed to sign people up for direct energy, had to follow a script in approaching potential customers and had to abide by the rules set out in a handbook, and was paid on a commission basis based on the number of people she signed up.  <u>Id.</u> at *2.  The court noted, in rejecting Defendants' arguments, that "the door-to-door workers in the instant case were not authorized to complete a transaction. Instead, the customer had to pass a credit check and the defendants had unlimited authority to reject Agreements."  <u>Id.</u> at *7.  The court also noted that "[its] conclusion is supported by FLSA cases addressing the role that the amount of commissions plays in determining if a worker is an outside salesperson. Wilkins was paid on a pure commission basis and earned nothing during her short stint as a door-to-door worker."  <u>Id.</u> at *8.  Similarly, the court in <u>Hurt v. Commerce Energy</u>, considering the outside sales exemption in the FLSA context, noted that "the outside sales exemption is premised on the belief that exempt employees typically earned salaries well above the minimum wage and enjoyed other benefits that set them apart from the nonexempt workers entitled to overtime pay."  1:12-CV-00758, 2013 WL 4427257 (N.D. Ohio Aug. 15, 2013).  In this case, as in <u>Wilkins</u>, some plaintiffs made more sign-ups, some made less, and some made none at all; this pattern combined with an extremely high turnover rate, as most workers did not stay with their respective companies for long.  <u>Wilkins</u>, 2015 WL 1234738 at *8.  They should not, therefore, be subject to the outside sales exemption.  Therefore, plaintiffs are entitled to minimum wage and overtime compensation as mandated by the FLSA.

### C.  NATURE AND EXTENT OF THE NOTICE

This Court should order notice to be mailed to all couriers who have worked for 2020 Companies and Open Door Marketing within the last three years, giving them a meaningful opportunity to understand their rights and to join this litigation.

1

### 1.    The Court Should Approve Plaintiffs' Proposed Notice Process

Plaintiffs request that the Court authorize them to send the Proposed Notice, attached as Exhibit A, to all individuals who have worked for Defendants promoting cell phones and wireless service plans during the period from September 8, 2012, to the present ("Potential Opt-In Plaintiffs"). Plaintiffs' Proposed Notice is "timely, accurate, and informative." Hoffmann-La Roche, 493 U.S. at 172. District courts often approve specific notice in FLSA cases, and the Court should do so here as well. See, e.g., Otey, 2013 WL 4552493 at *6; Flores, 2013 WL 2468362, *11; Benedict, 2014 WL 587135 at *15. Notice serves the FLSA's "broad" and "remedial" purpose (Valerio v. Putnam Assocs Inc., 173 F.3d 35, 42 (1st Cir. 1999), and the form and content of a § 216(b) notice should maximize participation. Otherwise, potentially meritorious claims will diminish or expire. See Nash, 683 F. Supp. 2d at 200 ("[P]arties alleged to be 'similarly situated' in a § 216(b) case must affirmatively opt in to toll the limitations period."). A proposed Opt-In Form for members of the potential collective action to fill out and return is attached as Exhibit B.

i.       The time period described in Section (i) above is appropriate. Because this case alleges a "willful" violation of the FLSA, see Doc. 1, Counts I and II, the applicable statute of limitations is three years. 29 U.S.C. § 255(a).

ii.      Defendant should also be ordered to produce a list of the Potential Opt-in Plaintiffs' names, last-known mailing addresses, last-known telephone numbers, email addresses, work locations, and dates of employment. Courts routinely require defendants to produce this information when granting conditional certification motions. Adams, 242 F.R.D. at 539 (ordering "defendant to submit to [plaintiffs] contact information of all potential plaintiffs in the collective action" and rejecting argument "that it would violate their employees' privacy rights"); Otey, 2013 WL 4552493 at *6 ("As courts routinely require defendants to produce the contact information of putative class members, and because Defendants have the contractual right to obtain the contact information at issue, Defendants shall procure and produce to Plaintiffs within

17

1   45 days of the date this order is issued the I P addresses and any known email addresses, mailing

2   addresses, and phone numbers of all individuals who fall within the class definition"); <u>Deatrick</u>

3   <u>v. Securitas Sec. Servs. USA, Inc.</u>, 13–cv–05016, 2014 WL 5358723, *5 (N.D. Cal. Oct. 20,

4   2014) (finding that "[c]ourts routinely require defendants to produce the contact information of

5   putative class members" and "reject[ing] Defendant Securitas's suggestion that disclosure of this

6   information to Plaintiff violates employees' privacy rights"); <u>Hoffmann–LaRoche</u>, 493 U.S. at

7   170 (holding that district courts have the authority to compel the production of contact

8   information of employees for purposes of facilitating notice in FLSA collective actions);

9   <u>Hernandez v. NGM Mgmt. Grp. LLC</u>, 12 Civ. 7795, 2013 WL 5303766, *5 (S.D.N.Y. Sept. 20,

10  2013) (ordering defendants to provide names, title, compensation rate, hours worked per week,

11  period of employment, last known mailing address, alternate addresses, and all known telephone

12  numbers) (collecting cases).

13        iii.      The Court should also allow Plaintiffs to send notice to class members by email,

14  as well as U.S. Mail.  <u>See</u> <u>Benedict</u>, 2014 WL 587135 at *14 ("Courts routinely approve the

15  production of email addresses and telephone numbers with other contact information to ensure

16  that notice is effectuated, and the Court finds that warranted here as well"); <u>Syed</u>, 2014 WL

17  6685966 at *8 (finding that "email is an increasingly important means of contact" and ordering

18  that notice be sent via hardcopy mail and email to all potential opt-ins); <u>Otey</u>, 2013 WL 4552493

19  at *5 (allowing for "notice by email and online postings").

20        iv.      Defendant 2020 Companies should also be required to post the notice online on

21  its website.  <u>See</u> <u>Otey</u>, 2013 WL 4552493 at *5 (ordering that "Defendants shall post the notice

22  approved by the Court on www.crowdflower.com and on the ten websites through which

23  CrowdFlower obtains the most crowdsourced work"); <u>Trinidad v. Pret A Manger (USA) Ltd.</u>,

24  962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (ordering that defendant post notice in its stores

25  because "[a] purpose of notice *is* to start a conversation among employees, so as to ensure that

26  they are notified about potential violations of the FLSA and meaningfully able to vindicate their

18

28

statutory rights."); <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); <u>Wren v. Rgis Inventory Specialists</u>, 06-05778, 2007 WL 4532218, *9 (N.D. Cal. Dec. 19, 2007) (rejecting defendant's objections and allowing for notice to be posted on defendant's website).

     v.     The Court should set the notice period of at least 90 days.  This opt-in period is warranted because of the large potential size of the class and because of the high turnover among couriers.  <u>See, e.g.</u>, <u>Otey</u>, 2013 WL 4552493 at *5 (finding "that the 90–day opt-in period is reasonable given the size of the class"); <u>Guy v. Casal Inst. of Nev., LLC</u>, 2:13–CV–02263, 2014 WL 1899006, *6 (D. Nev. May 12, 2014) (authorizing notification to putative class members for 90-day period and noting that "a large portion of the class may consist of former students who are not presently connected to the Defendant"); <u>Syed.</u>, 2014 WL 6685966 at *9 (noting that "[i]n approving longer periods of time, courts have accepted arguments that the potential class is transitory and there is a high turnover rate, meaning that additional investigation may be required in order to contact potential opt-in plaintiffs"); <u>Carrillo v. Schneider Logistics, Inc.</u>, CV 11–8557, 2012 WL 556309, *15 (C.D. Cal. Jan. 31, 2012) (granting 180 day opt-in period because the "case concerns low-wage, immigrant workers in an industry with high turnover").

     vi.     The Court should also authorize Plaintiffs to mail and e-mail a reminder to all potential class members who have not yet opted-in to this matter within 45 days of the first notice mailing.  It is well-documented that people often disregard collective action notices.  <u>See Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts</u>, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008).  Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights.  <u>See Sanchez v. Sephora USA, Inc.</u>, 11–03396, 2012 WL 2945753, *6 (N.D. Cal. July 18, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.") (internal citations omitted);

19

1  <u>Deatrick</u>, 2014 WL 5358723 at *5; <u>Harris</u>, 716 F. Supp. 2d at 847 (N.D. Cal. 2010).  Defendants

2  have no reason to oppose a reminder notice other than that it may increase the participation rate,

3  which is not a good reason to oppose this request.  Plaintiffs will bear the cost of the mailing and

4  reminder mailing, and it will not change the end of the notice period.

**CONCLUSION**

Plaintiffs have plainly shown that notice is appropriate at this stage.  Accordingly, the

Court should: (1) conditionally certify this action as a collective action under 29 U.S.C. § 216(b);

and (2) order that notice be issued to all couriers who have worked for Defendants during the last

three years.  A proposed notice and consent form are attached as Exhibits A and B.

Date: October 23, 2015

Respectfully submitted,

Carlos Conde, Shikwana Jennings, and Lisa Drake,
individually and on behalf of all others similarly
situated,

By their attorneys,

  /s/ Harold Lichten
Harold Lichten, *pro hac vice*
Jill Kahn, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com; jkahn@llrlaw.com

Matthew Carlson
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 817-1470
mcarlson@carlsonlegalservices.com

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by electronic filing on

October 23, 2015, on all counsel of record.

_/s/ Harold Lichten_____
Harold Lichten, Esq.

21