HAROLD LICHTEN, *pro hac vice*
(hlichten@llrlaw.com)
JILL KAHN, *pro hac vice*
(jkahn@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:   (617) 994-5800
Facsimile:   (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:   (510) 239-4710

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS CONDE, SHIKWANA JENNINGS, and LISA DRAKE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>20/20 Communications, Inc., Open Door Marketing, LLC, Jerrimy Farris, and Larry Clarke<br><br>Defendants. | Case No. 15-cv-04080-KAW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED EMPLOYEES PURSUANT TO 29 U.S.C. § 216(B)**<br><br>CASE FILED: September 8, 2015<br><br>Hearing Date:   February 4, 2016<br>Time:             11:00 am<br>Courtroom:    4<br>Magistrate Judge: Hon. Kandis A. Westmore |

# **TABLE OF CONTENTS**

I.  ARGUMENT………………………………………………………………………………...5

    A.  PLAINTIFFS HAVE PROVIDED SUFFICIENT EVIDENCE TO SHOW THAT PUTATIVE CLASS MEMBERS ARE SIMILARLY SITUATED……………...5

    B.  DEFENDANTS' MERITS-BASED DEFENSES ARE IMPROPER AND UNAVAILING IN DEFEATING A PRELIMINARY CONDITIONAL CERTIFICATE ORDER………………………………………………..……...6

        i.  Plaintiffs Do Not Fall Within the Outside Sales Exemption to the FLSA………………………………………………………………….....…8

        ii.  Defendant 20/20 is Plaintiffs' Joint Employer with Open Door…….…...10

    C.  NOTICE SHOULD BE ISSUED TO ALL PUTATIVE CLASS MEMBERS WHO WORKED FOR DEFENDANTS WITHIN THE STATUTORY PERIOD……………………………………………………………………………13

        i.  Notice Should Be Issued To All Individuals Promoting Defendants' Clients' Cell Phones And Wireless Service Plans……...……………...…13

        ii.  The Court Should Grant Plaintiffs' Notice as Proposed……………….....15

II.  CONCLUSION…………………………………………………………………………..…15

## TABLE OF AUTHORITIES

**Cases**

Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530 (N.D. Cal. 2007)……………….....1, 2, 14,15

Arnold v. DirecTV, Inc., 2012 WL 4480723 (E.D. Mo. Sept. 28, 2012) ..................................... 13

Barrera v. U.S. Airways Grp., Inc., 2013 WL 4654567 (D. Ariz. Aug. 30, 2013)......................... 7

Benedict v. Hewlett-Packard Co., 2014 WL 587135 (N.D. Cal. Feb. 13, 2014)...................... 7, 14

Bhumithanarn v. 22 Noodle Mkt. Corp., 2015 WL 4240985 (S.D.N.Y. July 13, 2015)................ 6

Bonnette v. California Health and Welfare Agency,704 F.2d 1465 (9th Cir. 1983) .............. 10, 11

Carlone v. Progressive Ins., Inc., C.A. No. 3:12-cv-00207 (D. Conn. 2014) ............................... 15

Centurioni v. City & Cty. of San Francisco, 2008 WL 295096 (N.D. Cal. Feb. 1, 2008).... 1, 7, 14

Chao v. A–One Med. Servs., Inc.,346 F.3d 908 (9th Cir. 2003) ............................................ 10, 12

Dailey v. Just Energy Mktg. Corp., 2015 WL 4498430 (N.D. Cal. July 23, 2015)........................ 9

Hill v. R+L Carriers, Inc., 690 F. Supp. 2d 1001 (N.D. Cal. 2010) .............................................. 5

Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989)........................................... 1, 7, 14, 15

Hurt v. Commerce Energy, 2013 WL 4427257 (N.D. Ohio Aug. 15, 2013)............................. 8, 9

In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053 (N.D. Cal. 2007)  2, 5

Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011)....................................... 1

Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623 (E.D. Cal. 2009) .................................. 9

Labrie v. UPS Supply Chain Sols., Inc., 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ................ 2

Lang v. DirecTV, 735 F. Supp .2d 421 (E.D. La. 2010) .............................................................. 13

Leuthold v. Destination Am., 224 F.R.D. 462 (N.D. Cal. 2004) ................................................... 1

II
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED
EMPLOYEES PURSUANT TO 29 U.S.C. § 216(B)
CASE NO. 4:15-CV-04080-KAW

Meza v. Intelligent Mexican Mktg., Inc., 720 F.3d 577 (5th Cir. 2013) ........................................ 9

Olivo v. GMAC Mortg. Corp., 374 F. Supp. 2d 545 (E.D. Mich. 2004) ........................................ 9

Perez v. Lantern Light Corp., 2015 WL 3451268 (W.D. Wash. May 29, 2015) .......................... 10

Rose v. Ruth's Chris Steak House, Inc., Civ. A. No. 07-12166 (Sept. 23, 2008, D. Mass.)……..15

Scott v. Bimbo Bakeries, USA, Inc., 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) ......................... 7

Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268 (N.D. Cal. 2015) ................................... passim

Sliger v. Prospect Mortgage, LLC, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011) .................... 5,7

Stanfield v. First NLC Fin. Servs., LLC, 2006 WL 3190527 (N.D. Cal. Nov. 1, 2006) ............ 5, 7

Taylor v. Waddell & Reid, 2012 WL 10669 (S.D. Cal. Jan 3, 2012) ............................................ 9

Torres-Lopez v. May, 111 F.3d 633 (9th Cir. 1997) ........................................................... 4, 10, 12

Webster v. Pub. Sch. Employees of Washington, Inc., 247 F.3d 910 (9th Cir. 2001) ................... 8

Wilkins v. Just Energy, 2015 WL 1234738 (N.D. Ill. Mar. 13, 2015) ....................................... 8, 9

Zaborowski v. MHN Gov't Servs., Inc., 2013 WL 1787154 (N.D. Cal. Apr. 25, 2013)……..5, 15

**Statutes**

29 C.F.R. § 541.500(a)(1) .............................................................................................................. 3

29 U.S.C. § 203(k) ......................................................................................................................... 3

**Other Authorities**

David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ.
 & Lab. Rel. Rev. 2 (July 2011) .............................................................................................. 13

David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be
 Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014) ....................................................... 13

The arguments made in Defendants' oppositions[1] do nothing to undercut the critical points in support of Plaintiffs' Motion, because Plaintiffs have sufficiently demonstrated that they are similarly situated to other potential class members to meet the "modest factual showing" required for conditional certification.[2]  As the Supreme Court has noted, the Fair Labor Standard Act's ("FLSA's") broad remedial purpose encompasses ensuring that "employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Hoffman-La Roche, 493 U.S. at 170.[3]

Due to the lenient requirements for conditional certification, "[c]ourts usually grant conditional class certification at this stage."  Centurioni v. City & Cty. of San Francisco, 2008 WL 295096, *2 (N.D. Cal. Feb. 1, 2008) (collecting cases).  Plaintiffs have satisfied their lenient burden by showing that they, and all individuals promoting Defendants' clients' cell phones and

---

[1]  Defendant 20/20 Communications, Inc. ("20/20") submitted a separate opposition to Plaintiffs' Motion (see Doc. 52) from Open Door Marketing, LLC ("Open Door"), Jerrimy Farris, and Larry Clark (see Doc. 56).  Open Door and the individual Defendants merely incorporated certain arguments made by 20/20 in its Opposition.  Thus, Plaintiffs respond to all Defendants' oppositions through this reply memorandum.

[2]  In order to carry out the purpose of the FLSA, courts have followed a two-step process, whereby notice is issued prior to the completion of discovery, upon a lenient standard that requires a showing that putative class members are similarly situated.  See Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 536 (N.D. Cal. 2007); Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D. Cal. 2004).  It is not until the second stage of the inquiry, when a court knows the composition of the case based upon which employees have opted in, and discovery has been completed, that the Court would then look at these more detailed questions to determine whether the employees who have opted in are similarly enough situated for their claims to be tried together or whether instead the class should be decertified.  See Adams, 242 F.R.D. at 536.  Under the Supreme Court's pronouncement in Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989) that employees should receive notice of an FLSA case enabling them to make an informed decision as to whether to participate in the first instance, it would be unfair and improper to deprive potential class members of notice of these claims.  After the notice period and discovery, Defendants can move for decertification if warranted.

[3]  Sending notice, and thereby encouraging employees to enforce their rights, helps to advance the FLSA's enforcement mechanism, which relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'"  Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011) (internal citation omitted).  Employees cannot vindicate rights of which they are not aware.

wireless service plans, are subject to the same common policy, through which they are paid only a set dollar amount for each qualified customer they signed up, and are not paid minimum wage for all hours worked, or overtime for hours worked over 40 in one week.  Contrary to Defendants' contention, at this stage, Plaintiffs carry no burden to show that the policy was actually illegal.  "Courts have held that conditional certification requires only that 'plaintiffs make substantial *allegations* that the putative class members were subject to a single illegal policy, plan or decision.'"  In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007) (internal citations omitted) (emphasis added).  Here, Plaintiffs allege that Defendants' policy of paying them only a set dollar amount for each qualified customer they sign up, resulting in their failure to earn minimum wage for all hours worked, or to be paid overtime for hours worked over 40 in one week, is an illegal policy.  However, whether Plaintiffs are, as Defendants argue, exempt from the FLSA's minimum wage or overtime requirement as outside salesmen is a merits-based argument, which courts have held should not be considered until the second stage of the certification inquiry.[4]  Indeed, Defendants' blanket merits-based defense shows that Plaintiffs were all similarly situated with respect to a single policy that can be evaluated on a class-wide basis.

Nonetheless, Plaintiffs do not qualify for the outside sales exemption, where: (1) Defendants exercise strict control over when and where they work, and they frequently earn less than minimum wage; and (2) Plaintiffs are not making "sales" but rather signing up

---

[4]    See Labrie v. UPS Supply Chain Sols., Inc., 2009 WL 723599, *6 (N.D. Cal. Mar. 18, 2009) ("The court finds that [defendant's] arguments raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify or motion for summary judgment once notice has been given, the deadline to opt-in has passed, and discovery is closed."); Adams, 242 F.R.D. at 539 (declining to evaluate the merits at the conditional certification stage).

customers for a free product.  Plaintiffs and putative class members seek to sign potential customers up for the "Lifeline Program," a federal program through which wireless service providers receive government subsidies in exchange for providing qualifying low-income households with discounted wireless services.  See "Access Wireless, About the Lifeline Program," Declaration of Jill Kahn ("Kahn Dec."), Exhibit 1, at Exhibit A.  Both Assurance Wireless and Access Wireless, the 20/20 clients for whom Plaintiffs provided promotional services, provide free cell phones and wireless services for qualified customers.  See id.; Assurance Wireless Website, Kahn Dec., Exhibit B.  Thus, when Plaintiffs and putative class members sign up customers for these services, it does not constitute a "sale" or "obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid" within the meaning of the outside sales exemption to the FLSA.  See 29 C.F.R. § 541.500(a)(1); 29 U.S.C. § 203(k).  Thus, Plaintiffs are not exempt from the minimum wage and overtime protections provided by the FLSA.

20/20 also argues that notice should not issue as to workers who promoted its clients' cell phones and wireless service plans because Plaintiff Conde and all putative class members who worked directly for 20/20 signed individual arbitration agreements, and 20/20 is not a joint employer with Open Door.  This argument ignores the fact that Plaintiff Drake worked directly for 20/20 from August through October 2014, and 20/20 has not alleged or put forth any evidence to suggest that she signed an arbitration agreement.  See Declaration of Lisa Drake

("Drake Dec."), Doc. 21-5 ¶¶ 3, 4.[5]  Thus, notice must issue to all putative class members who worked directly for 20/20, so that they can receive notice of this matter and an opportunity to opt-in.  If 20/20 alleges that any additional opt-in plaintiffs are bound to arbitrate their claims, it can then move to compel arbitration.  See Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268, 276 (N.D. Cal. 2015) ("The question whether certain employees are precluded from participating as members of the collective action by virtue of the arbitration/settlement agreements is not properly before the court at this first stage of the certification.").

Moreover, 20/20 asks this Court to put the cart before the horse, and decide the merits of the case before granting conditional certification.  Whether 20/20 is a joint employer with Open Door is a substantive issue in this case – no different than the ultimate question of whether Open Door is Plaintiffs' employer for the purposes of the FLSA, although it classified them as independent contractors.  Thus, the Court should issue notice to putative class members, and then, after class members have opted in and discovery has been conducted, determine whether a joint employment relationship exists.  While Plaintiffs contend that they need to take discovery in order to make a comprehensive argument as to the nature of the relationship between 20/20, Open Door, and Plaintiffs, the preliminary evidence that they have amassed shows that 20/20 is Plaintiffs' joint employer under the FLSA, under the "expansive" definition recognized by the Ninth Circuit.  See Torres-Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997).

Most importantly, nowhere in their oppositions do Defendants refute the singular fact that is necessary for conditional certification – that Plaintiffs and all putative class members were

---

[5] 20/20 argues that Drake never worked directly for 20/20.  This is a merits-based argument, properly

subject to a common policy or plan, which Plaintiffs allege is illegal. For this reason, Plaintiffs' Motion must be granted, and the Court should issue notice to potential class members.[6]

## I. ARGUMENT

### A. PLAINTIFFS HAVE PROVIDED SUFFICIENT EVIDENCE TO SHOW THAT PUTATIVE CLASS MEMBERS ARE SIMILARLY SITUATED

Plaintiffs have submitted more than sufficient evidence to meet their modest burden at the conditional certification stage to "make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.'" In re Wells Fargo, 527 F. Supp. 2d at 1071. Courts have consistently granted conditional certification based upon the same evidence that Plaintiffs have presented here -- uniform classification as exempt from minimum wage or overtime requirements.[7] Here, the three named Plaintiffs and three opt-in plaintiffs, who worked at the Las Vegas and Oakland locations, and also have personal knowledge about the Stockton location, have submitted sworn statements attesting that they worked for 20/20 and

---

evaluated at the decertification stage.

[6] See, e.g., Stanfield v. First NLC Fin. Servs., LLC, 2006 WL 3190527, *3 (N.D. Cal. Nov. 1, 2006) (granting conditional certification where defendant argued that putative collective action members were exempt from the FLSA overtime requirements but "[did] not appear to dispute that it classifie[d] all [putative class members] as exempt and [did] not pay them overtime . . . [and] Defendant did not submit any affidavits from current or former employees in the relevant positions, stating that their tasks were significantly different from those identified by Plaintiffs.").

[7] See, e.g., Shaia, 306 F.R.D. at 273-75 (granting certification of executive chefs nationwide, uniformly classified as overtime exempt); Zaborowski v. MHN Gov't Servs., Inc., 2013 WL 1787154, *1 (N.D. Cal. Apr. 25, 2013) (granting certification of consultants nationwide who alleged that they had been misclassified as independent contractors exempt from overtime); Sliger v. Prospect Mortgage, LLC, 2011 WL 3747947, *3 (E.D. Cal. Aug. 24, 2011) (granting certification where plaintiffs showed that all putative class members were paid on a commission-only basis and were not paid overtime when they worked in excess of 40 hours per week); Hill v. R+L Carriers, Inc., 690 F. Supp. 2d 1001, 1009-10 (N.D. Cal. 2010) (granting certification where plaintiffs showed that putative class members "do not receive overtime pay, work similar schedules and perform similar duties"); Stanfield, 2006 WL 3190527, *1 (granting certification of workers with three different job titles nationwide, where plaintiffs alleged they were all classified as exempt from overtime requirements of the FLSA).

Open Door, and were only paid a set dollar amount for each qualified customer they signed up, resulting in a failure to earn minimum wage for all hours worked, or overtime for hours worked over 40 in one week.[8]  By uniformly paying their workers only based upon the number of qualified customers they have signed up, Defendants have made a blanket classification of all putative class members as exempt from overtime and minimum wage requirements -- a point that they do not (and cannot) refute in their oppositions to Plaintiffs' Motion.  Such evidence is more than sufficient for Plaintiffs to meet their modest burden to show that putative class members are similarly situated with respect to Defendants' common policy.

**B. DEFENDANTS' MERITS-BASED DEFENSES ARE IMPROPER AND UNAVAILING IN DEFEATING A PRELIMINARY CONDITIONAL CERTIFICATION ORDER**

As other courts have routinely held, the merits of *either* party's claims or defenses have no bearing on whether notice should be issued under Section 216(b).  As the court explained in Shaia v. Harvest Mgmt. Sub LLC:

> The initial 'notice stage' is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims. Thus, ***courts routinely hold that the potential***

---

[8]   See October 23, 2015 Declaration of Carlos Conde ("Conde Dec. I"), Doc. 21-3 ¶¶ 15-17; October 22, 2015 Declaration of Shikwana Jennings ("Jennings Dec. I"), Doc. 21-4 ¶¶ 14, 17-18; Drake Dec. ¶¶ 15, 19, 20; Declaration of Patrice Webb ("Webb Dec."), Doc. 21-6 ¶¶ 13, 17, 18; Declaration of Paris Lamont Howard ("Howard Dec."), Exhibit 2 ¶¶ 14, 20, 21; Declaration of Kiyana Merchant ("Merchant Dec."), Exhibit 3 ¶¶ 11, 16, 17; see also December 19, 2015 Declaration of Shikwana Jennings ("Jennings Dec. II"), Exhibit 4, ¶ 6 (practices were the same at Stockton location).  These statements also allege a level of control over hours and location worked, coupled with evidence that Plaintiffs were not actually selling anything to customers, which support Plaintiffs' allegations that they are not properly classified as outside salesmen exempt from the requirements of the FLSA.  See, e.g., Jennings Dec. I ¶¶ 10- 13 (required to attend meetings and report to locations by a certain time); Kahn Dec., Ex. A (explaining that the Lifeline Assistance Program offers free cell phones and wireless service plans).

Courts have granted conditional certification based upon just one affidavit containing such assertions.  See Bhumithanarn v. 22 Noodle Mkt. Corp., 2015 WL 4240985, *1 (S.D.N.Y. July 13, 2015).  The putative class here should not be penalized because Plaintiffs submitted affidavits from six putative class members, among whom Defendant attempts to draw distinctions in arguing that the collective action Plaintiffs seek is overbroad.

> *applicability of an FLSA exemption does not preclude conditional certification.* Even if plaintiffs eventually do not prevail on their FLSA claim because they are subject to exemptions, a collective action should still be certified if they are similarly situated.

306 F.R.D. at 272 (internal citations and quotations omitted) (emphasis added).  See also Scott v. Bimbo Bakeries, USA, Inc., 2012 WL 645905, *10 (E.D. Pa. Feb. 29, 2012) (refusing to address defendants' merits-based defense before granting conditional certification, despite substantial evidence that defendants would ultimately prevail on the merits).[9]  Thus, the issues Defendants raise about whether putative class members are properly exempt from the FLSA's minimum wage or overtime requirements as outside salesmen, or whether 20/20 is properly considered the Plaintiffs' joint employer, are inappropriate for the Court to consider at this time.[10]  The sole question here is whether the plaintiffs have produced a sufficient showing to warrant notice

---

[9]   See also Hoffman-La Roche, 493 U.S. at 174 (when assessing Section 216(b) motions, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"); Benedict v. Hewlett-Packard Co., 2014 WL 587135, *11 (N.D. Cal. Feb. 13, 2014) ("[T]he potential applicability of an FLSA exemption does not preclude conditional certification") (internal citation omitted) (collecting cases); Barrera v. U.S. Airways Grp., Inc., 2013 WL 4654567, *5 (D. Ariz. Aug. 30, 2013) (same) (collecting cases); Stanfield, 2006 WL 3190527, *4 ("[E]ven if it turns out that [p]laintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a collective action should still be certified if they are similarly situated."); Sliger v. Prospect Mortg., LLC, 2011 WL 3747947, *3 (E.D. Cal. Aug. 24, 2011) (holding defendant's evidence that plaintiffs are exempt employees was "beside the point at this [notice]stage of the proceeding"); Centurioni, 2008 WL 295096, *2 ("[A]t this [notice] stage, courts do not consider the merits of the claims.").

[10]   20/20 also argues that no Plaintiff has standing to assert claims against 20/20 because Plaintiff Conde agreed to arbitrate his claims during the time he worked directly for 20/20.  This argument is moot because Plaintiff Drake did work directly for 20/20, and 20/20 has not put forth any evidence that she signed an arbitration agreement.  20/20's assertion that all putative class members who worked directly for 20/20 are bound to arbitrate their claims is therefore premature at this stage.  The Court should order notice to issue to all putative class members, and 20/20 may then move to compel arbitration for any other opt-in plaintiffs whom it believes are bound to arbitrate their claims.  See Shaia, 306 F.R.D. at 276.  Moreover, as explained further herein, Plaintiffs Jennings and Drake have standing to assert claims against 20/20 as their joint employer.

under Section 216(b).  Nonetheless, Plaintiffs address each of Defendants' merits-based defenses here in an abundance of caution.

### i. Plaintiffs Do Not Fall within the Outside Sales Exemption to the FLSA

"An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies. . . . FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit."  Webster v. Pub. Sch. Employees of Washington, Inc., 247 F.3d 910, 914 (9th Cir. 2001) (internal quotation and citations omitted).  Defendants have not met this heavy burden in their oppositions, and this argument will also fail once this case reaches the merits phase.

Plaintiffs are not properly classified as outside salesmen exempt from the FLSA's minimum wage and overtime requirements because: (1) Plaintiffs are closely controlled by Defendants and often earn less than minimum wage; and (2) Plaintiffs are not making "sales" as defined by the Act, but rather signing up customers for a free product.  As explained in greater detail in Plaintiffs' opening brief, courts have held that in nearly identical circumstances, workers promoting products, who were supervised as to where they worked and what hours they worked, and often did not earn minimum wage, were not outside salesmen exempt under the FLSA.  See Plaintiffs' Mot., at p. 15-16 (citing Wilkins v. Just Energy, 2015 WL 1234738 (N.D. Ill. Mar. 13, 2015); Hurt v. Commerce Energy, 2013 WL 4427257 (N.D. Ohio Aug. 15, 2013)).  Moreover, the Federal Regulations explaining the outside sales exemption to the FLSA state that the employee's primary duty must be sales or "obtaining orders or contracts for services or for the use of facilities *for which a consideration will be paid*."  See 29 C.F.R. § 541.500(a)(1) (emphasis added); 29 U.S.C. § 203(k).  Here, Plaintiffs and putative class members sign up

customers for free cell phones and wireless service plans. <u>See</u> Kahn Dec, Ex. A. Thus, this is not a "sale" and no consideration will be paid, such that they should be subject to this narrow exemptions to the most basic requirements of the FLSA.[11] Plaintiffs and putative class members do not meet the requirements for the outside salesperson exemption, and thus, are entitled to minimum wage and overtime under the FLSA.[12]

---

[11] Defendants attempt to distinguish <u>Wilkins</u> and <u>Hurt</u> by citing to <u>Dailey v. Just Energy Mktg. Corp.</u>, 2015 WL 4498430, *3-5 (N.D. Cal. July 23, 2015), in which the North District of California disagreed with those courts as to whether a contract that could later be revoked constituted a "sale." However, Plaintiffs argue that when they signed up customers it did not constitute a sale, not merely because the customer might not ultimately qualify, but because that customers was in fact singing up for free services, rather than paying any consideration. Moreover, the court in <u>Dailey</u> did not reject <u>Wilkins</u> and <u>Hurt</u>'s contentions that the outside sales exemption is not meant for workers who are closely supervised and earn less than minimum wage. Instead, it found factual discrepancies between the plaintiff in <u>Dailey</u> and those in <u>Wilkins</u> and <u>Hurt</u>, and held that the plaintiff in <u>Dailey</u> was properly classified as an outside salesperson where there was no evidence that she was not well compensated. <u>Id.</u>

Defendant also cites to dicta in <u>Meza v. Intelligent Mexican Mktg., Inc.</u>, 720 F.3d 577 (5th Cir. 2013), a Fifth Circuit Court of Appeals decision, in which the court held that a route salesman who earned less than minimum wage was properly classified as an outside salesman exempt from the FLSA. This court is not bound by a decision of the Fifth Circuit, and the facts in <u>Meza</u> are also distinguishable from those at issue here. The plaintiff in <u>Meza</u> was a route salesman with prior sales experience, who trained for his position for a month, and was indisputably making "sales" within the FLSA definition to customers. Whereas countless similarities exist between the plaintiffs in <u>Hurt</u> and <u>Wilkins</u> and Plaintiffs here, the only similarity between Plaintiffs and the plaintiff in <u>Meza</u> is that they all earned less than minimum wage.

[12] Defendants cite to two cases in outside jurisdictions to support their argument that Plaintiffs' motion for conditional certification should be denied because Plaintiffs fall under the outside salesman exemption. Both are inapposite here. In <u>Taylor v. Waddell & Reid</u>, 2012 WL 10669 (S.D. Cal. Jan 3, 2012), the defendant filed a motion for partial summary judgment on the issue of whether the plaintiffs were properly exempt from the FLSA as outside salesmen, and plaintiffs filed a motion for conditional certification five days later. <u>Id.</u> at *1. The court held a hearing on both motions on the same day. <u>Id.</u> The court granted the defendant's motion for partial summary judgment, and explained: "Because the Court grants the motions for partial summary judgment above, no FLSA claims survive, and the Court therefore denies as moot Plaintiffs' motion for conditional class certification." <u>Id.</u> at *5. Because there is no motion for summary judgment pending, the court here would have no such basis to deny Plaintiffs' conditional certification claims as moot. Moreover, in finding for the defendant in <u>Taylor</u>, the court explicitly noted that the workers' contract stated: "***you shall be free to . . . exercise your own judgment as to the persons whom you solicit and the time, place, and manner of solicitation.***" <u>Id.</u> at *1 (emphasis in original). Plaintiffs argue that they do not fall under the outside sales exemption precisely because they were not entitled to these same freedoms. In <u>Olivo v. GMAC Mortg. Corp.</u>, 374 F. Supp. 2d 545 (E.D. Mich. 2004), the court explicitly noted that: "it ha[d] afforded Plaintiffs a period of discovery solely on the issue of whether or not this action should proceed as a collective action pursuant to 29 U.S.C. § 216(b)," and therefore applied a "more restrictive standard" in determining whether to grant their motion for conditional certification. <u>Id.</u> at 548 n. 1. No discovery has taken place in this case and thus, this more restrictive standard would not apply here. Moreover, the more restrictive standard applied in <u>Olivio</u> was outright rejected by another court in the Ninth Circuit. In <u>Kress v.</u>

### ii.     Defendant 20/20 is Plaintiffs' Joint Employer with Open Door

"Whether an entity is a 'joint employer' under the FLSA is a question of law." Torres–Lopez, 111 F.3d at 638.  Thus, in light of the well-settled case law discussed above in which courts have held that questions of law are not to be determined at the conditional certification stage, Defendant must also fail in its argument that conditional certification should not be granted as to 20/20 because it is not Plaintiffs' joint employer with Open Door.

However, even at this early stage, Plaintiffs have evidence that 20/20 operated as their joint employer.  The Ninth Circuit Court of Appeals has noted that, "the concept of joint employment should be defined expansively under the FLSA." Torres-Lopez, 111 F.3d at 639. "In the Ninth Circuit, joint employment is analyzed under the 'economic reality' test. [D]etermination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" Perez v. Lantern Light Corp., 2015 WL 3451268, *3 (W.D. Wash. May 29, 2015) (quoting Chao v. A–One Med. Servs., Inc., 346 F.3d 908, 917 (9th Cir. 2003); Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983)).

Courts in the Ninth Circuit generally consider several factors when assessing whether the parties have a joint employment relationship.  One such set of factors, outlined in Bonnette v. California Health and Welfare Agency, consider whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or

---

PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 628 n. 11 (E.D. Cal. 2009), the court explicitly rejected the heightened standard used in Olivio and a few other cases, noting that, with the exception of one case, "the court is not aware of any district court within the Ninth Circuit to have followed these cases. Courts within this circuit instead refuse to depart from the notice stage analysis prior to the close of discovery." Id. at 628.

conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. 704 F.2d at 1470. Plaintiffs have evidence that 20/20 is involved in both the hiring and termination process for the putative class members.[13] 20/20 also supervises the outreach agents by keeping track of the number of customers that they have signed up each day and each week. Id. ¶¶ 7, 8, 11, Ex. C; Jennings Dec. II ¶ 8, Ex. C. Jerrimy Farris directly supervised outreach agents while he was the Director of Sales at 20/20 Companies, tracking what time they started and completed work each day, the exact locations where they worked, and when they signed up new customers. Conde Dec. II ¶ 7, 8, Exhibit A.[14] Additionally, 20/20 held weekly meetings with managers at Open Door, where they discussed the weekly number of sign-ups achieved by outreach agents, the locations where the agents should work, new outreach agent hires, and the standard operating procedures for outreach agents, among other items. Conde Dec. II ¶ 10, Ex. B.[15]

---

[13]  20/20 sets up the interviews with prospective outreach agents, and follows up with Open Door's managers regarding the results of the interview. See December 18, 2015 Declaration of Carlos Conde ("Conde Dec. II"), Exhibit 5 ¶ 14, Exhibit D. (In its Opposition, 20/20 attempts to negate evidence of a relationship between 20/20 and Open Door set forth by Carlos Conde, stating that he had not submitted any documents from after November 2014. 20/20 Opposition ("20/20 Opp.") at 6. However, this timing is irrelevant where 20/20 states that it entered into a contractual relationship with Open Door starting in October 2014 (20/20 Opp., Beugler Dec. ¶ 2), and does not state that this relationship changed at any point between October 2014 and the present.) Additionally, when new outreach agents are hired, they must use 20/20's portal to fill out preliminary information. Jennings Dec. II ¶ 2, Exhibit A. When an outreach agent is terminated, 20/20 deactivates its access from the clients' database and informs the Open Door manager that he has been terminated. Conde Dec II ¶ 15.

[14]  As further evidence of overlap between 20/20 and Open Door, Defendant Larry Clark simultaneously held the positions of President of Open Door Marketing and Vice President of Sales at 20/20. See Kahn Dec., Ex. C.

[15]  20/20 claims that it cannot be considered Plaintiffs' joint employer because it was not directly involved in hiring and firing or setting rates of pay. Courts have held that this alone does not defeat a joint employer relationship, explaining that where the "economic reality" shows that a party employed the workers for their services performed, "[t]he fact that [they] delegated . . . various responsibilities does not alter this; it merely makes them joint employers." Bonnette, 704 F.2d at 1470. 20/20 employed the Plaintiffs for their outreach services, profited from these services, and then paid Open Door. See Beugler Dec. ¶¶ 2, 3. That 20/20 delegated to Open Door the direct ability to hire or fire, or set rates of pay, does not change the economic reality of the parties' relationship.

The Ninth Circuit applies another set of factors where, as here "a company has contracted for workers who are directly employed by an intermediary company." Chao, 346 F.3d at 917. 20/20 states in its Opposition that it contracts with Open Door to provide direct services to its clients. See Beugler Dec. ¶ 2. These "services" consist of the work that Plaintiffs perform, promoting 20/20's clients' cell phones and wireless service plans. See Kahn Dec., Ex. D ¶ 12 (stating that Sprint contracts with 20/20 to market the Assurance Wireless brand). Thus, the factors laid out in Torres–Lopez, 111 F.3d at 640, also referred to as the "non-regulatory facors" are also relevant here.[16] Plaintiffs also have evidence supporting a joint employment relationship under the Torres-Lopez factors. 20/20 provides the equipment necessary for outreach agents to perform their work (Conde Dec. II ¶ 12; Howard Dec. ¶ 17; Merchant Dec. ¶ 13), outreach agents typically do not perform services for companies other than 20/20 and Open Door (Conde Dec. I ¶ 18; Jennings Dec. I ¶ 20; Drake Dec. ¶ 21; Howard Dec. ¶ 22; Merchant Dec. ¶ 19), and outreach agents perform piece work, in which they are paid for each customer they signed up (see, e.g., Jennings Dec. II ¶ 1; Drake Dec. ¶ 19). The outreach agents' work requires no initiative, judgment, or foresight – no skill was required in order to be hired.[17] Outreach agents have no meaningful opportunity for profit and loss depending upon skill; they

---

[16] These factors are: (1) whether the work was a specialty job on the production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (3) whether the premises and equipment of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another; (5) whether the work was "piece work" and not work that required initiative, judgment or foresight; (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill; (7) whether there was permanence in the working relationship; and, (8) whether the service rendered is an integral part of the alleged employer's business.

[17] See, e.g., Howard Dec. ¶ 2 (worked as security guard prior to 20/20 and Open Door) Webb Dec. ¶ 2 (worked as massage therapist and health educator prior to 20/20 and Open Door).

are merely paid more the more customers they sign up, at the rates set by Defendants. See, e.g., Drake Dec. I ¶ 19; Howard Dec. ¶ 20. There is also permanence in the relationship in that there was no set term or end date.[18] Lastly, the services that Plaintiffs provide are an integral part of 20/20's business.[19] Thus, the balance of factors weigh in favor of holding 20/20 as a joint employer, even at this early stage.[20]

### C. NOTICE SHOULD BE ISSUED TO ALL PUTATIVE CLASS MEMBERS WHO WORKED FOR DEFENDANTS WITHIN THE STATUTORY PERIOD

#### i. Notice should be issued to all individuals promoting Defendants' clients' cell phones and wireless service plans

Plaintiffs have submitted more than sufficient evidence to meet their lenient burden to show that 20/20 and Open Door workers promoting cell phones and wireless service plans throughout the country are similarly situated.[21] Plaintiffs have submitted evidence that workers

---

[18] See, e.g., Conde Dec. ¶¶ 4, 24 (worked for 20/20 and Open Door from February 2014 through April 2015); Jennings Dec. ¶¶ 2, 21 (worked for 20/20 and Open Door from February through June 2015); Webb Dec. ¶ 3 (worked for 20/20 and Open Door from February through July 2015).

[19] 20/20 states plainly on the home page of its website: "SERVICES WE PROVIDE: Sales & Marketing. We specialize in selling products and services through multiple channels and locations." Kahn Dec., Ex. E.

[20] 20/20 is responsible for a "fissured employment" scheme, which it has perpetrated in order to expand its business, without taking responsibility for the workers providing promotional services to its clients. "Fissured employment" occurs when a large company attempts to shirk its role as a direct employer, claiming to disassociate itself from the workers who perform the services provided by its business, while in fact maintaining tight control over their work. See, e.g., David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011). 20/20 cannot shirk its responsibility to its workers merely because it requires that they work directly for another company. Courts have therefore granted conditional certification for similarly situated workers who are jointly controlled by two different entities. See, e.g., Arnold v. DirecTV, Inc., 2012 WL 4480723, *5 (E.D. Mo. Sept. 28, 2012) (granting conditional certification of collective action comprised of all DirecTV technicians during relevant time period, where the plaintiffs worked directly for DirecTV subcontractors but alleged a joint employment relationship with DirecTV). Lang v. DirecTV, 735 F. Supp .2d 421, 433-34 (E.D. La. 2010) (same).

[21] A number of courts have also certified class and collective actions encompassing multiple facilities or locations (even beyond where the named plaintiffs worked) in circumstances similar to these, in which allegations

in three different locations in two different states were classified as independent contractors, and only paid a set dollar amount for each qualified customer they signed up. To limit the notice to other workers at the same locations where the Plaintiffs and opt-ins worked would defeat the purpose of conditional certification to notify putative class members of their rights. See Hoffman-La Roche, 493 U.S. at 170.[22] Notice should therefore be issued to workers across the country.[23]

Defendants also argue that Plaintiffs' proposed class is overbroad based upon minor differences between the named Plaintiffs. However, courts have held that putative class members need only be similarly situated, and not identical. See Benedict, 2014 WL 587135, *10 (collecting cases). The Court can consider individualized issues at the decertification stage. Id. at *11.

---

are made of system-wide policies or practices that violate the law. For example, in Shaia v. Harvest Mgmt. Sub LLC, the court held that declaration from two different employees describing similar job duties and exemption from overtime at three different locations were sufficient to authorize notice a nationwide class of employees. 306 F.R.D. 268 at 275. In Adams, the court certified a nationwide FLSA class of employees working in over "500 different locations, under more than fifty different contracts and in thirty-six different states," and emphasizing that the plaintiffs were similarly situated because they were "subject to the same alleged policy." 242 F.R.D. at 537-38. The Adams court held that the plaintiffs did not need to demonstrate the existence of similarly situated persons at every location in the proposed class, but rather, "the named plaintiff must demonstrate that there existed at least one similarly situated person at a facility other than his own." Id. Plaintiffs here have met this lenient standard. See also Centurioni, 2008 WL 295096, *3 (denying defendant's request to limit notice to putative class members in locations where plaintiffs worked, and granted conditional certification of all locations).

[22] Only after the notice process has taken place will workers from other locations have the opportunity to opt-in to the suit. At that point, the Court will have a fair opportunity to assess, under the more stringent second-stage standard, whether the action can proceed collectively on behalf of individuals who worked at various locations who have opted in.

[23] Defendants state that "[a]t an absolute minimum, the scope of any certification must be limited to those workers who were engaged by Open Door who have not entered into an arbitration agreement with 20/20." Defendants ask this Court to prematurely limit the scope of the class at the conditional certification stage. The Court should allow all individuals who have worked for Open Door and 20/20 to receive notice and opt-in to the case. If 20/20 believes that any of these opt-ins have agreed to arbitrate their claims, it can then move to compel arbitration of these claims. This will allow opt-ins to receive notice of their claims, and provide them with the ability to refute 20/20's contention if they do not believe that they have agreed to arbitration.

### ii.   The Court Should Grant Plaintiffs' Notice as Proposed

Plaintiffs have submitted a form of notice that has been specifically adopted by a number of federal courts.[24] The Court should grant approval of Plaintiffs' proposed notice, and permit Plaintiffs' counsel to administer the notice, without the use of a third-party administrator. Federal courts routinely order defendants to produce putative class members' contact information to plaintiffs' counsel.[25] Moreover, both parties will save the significant cost of a third-party administrator through Plaintiffs' counsel's oversight of the notice process in-house.

Lastly, Defendants should be required to post notice on their website. Defendants' argument that such a posting would be "disruptive" to its business, is a transparent effort at making it more difficult for putative class members to learn of their rights.

## II.   CONCLUSION

Plaintiffs have met their lenient burden to show that all individuals promoting Defendants' cell phones and wireless service plans are similarly situated in that they are all paid a flat rate for each customer signed up, without any guarantee of minimum wage for every hour worked, or overtime for hours worked over 40 in one week. Accordingly, the Court should order that notice be issued to individuals promoting Defendants' cell phones and wireless service plans during the last three years, allowing them to opt in to the case if they choose.

---

[24] See, e.g., Carlone v. Progressive Ins., Inc., C.A. No. 3:12-cv-00207, Doc. 91, at 24; and Doc. 101 (D. Conn. 2014) (granting notice identical in form to Plaintiff's proposed notice); Rose v. Ruth's Chris Steak House, Inc., Civ. A. No. 07-12166, Doc. 18; minute order dated Sept. 23, 2008 (D. Mass.) (same).

[25] In Adams, 242 F.R.D. at 539, the court explicitly rejected the defendant's argument that it should not be ordered to produce its employees' contact information because of their privacy concerns, or in the alternative, that it should only provide them to a third party administrator. The court explained that "the Supreme Court expressly authorized production of this type of information for notice purposes." Id. (citing Hoffmann-La Roche, 493 U.S. at 170). See also Shaia, 306 F.R.D. at 276 (ordering production of the names and addresses of putative class members); Zaborowski, 2013 WL 1787154, *4 (same).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED
EMPLOYEES PURSUANT TO 29 U.S.C. § 216(B)
CASE NO. 4:15-CV-04080-KAW

Respectfully submitted,

CARLOS CONDE, SHIKWANA JENNINGS, and LISA DRAKE, individually and on behalf of all others similarly situated,

By their attorneys,

 /s/ Harold Lichten_____
Harold Lichten, *pro hac vice*
Jill Kahn, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  hlichten@llrlaw.com, jkahn@llrlaw.com

Matthew Carlson (SBN 273242)
CARLSON LEGAL SERVICES
100 Pine Street, Suite 1250
San Francisco, CA 94111
(510) 239-4710
Email: mcarlson@carlsonlegalservices.com

Dated:       December 21, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on December 21, 2015, on all counsel of record.

          /s/ Harold Lichten_____
             Harold Lichten, Esq.