1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    CARLOS CONDE, et al.,                    Case No.  15-cv-04080-KAW

              Plaintiffs,

8                                             ORDER GRANTING 20/20'S MOTION TO
                                              COMPEL ARBITRATION; DENYING
9                                             OPEN DOOR'S MOTION TO DISMISS
         v.                                   BASED ON FORUM NON CONVENIENS
10                                            AND RULE 12(b)(3); GRANTING
                                              DEFENDANTS' MOTIONS TO DISMISS
11   OPEN DOOR MARKETING, LLC, et al.,        FOR FAILURE TO STATE A CLAIM;
                                              AND HOLDING IN ABEYANCE
12            Defendants.                     PLAINTIFFS' MOTION FOR NOTICE

13

14                                            Re: Dkt. Nos. 21, 50, 51, 53, 54

15

16         In this putative class action, Plaintiffs Carlos Conde ("Conde"), Shikwana Jennings

17   ("Jennings"), and Lisa Drake ("Drake") have sued Defendants 20/20 Communications, Inc.

18   ("20/20"), Open Door Marketing, LLC ("Open Door"), Larry Clark ("Clark"), and Jerrimy Farris

19   ("Farris") for various violations of state and federal labor laws.  Now before the Court are the

20   following motions:  (1) Open Door's motion to compel arbitration and dismiss, or alternatively,

21   stay claims, Dkt. No. 49,[1] (2) Open Door's motion to dismiss based on forum non conveniens and

22   Rule 12(b)(3), Dkt. No. 50, (3) Open Door's motion to dismiss the complaint pursuant to Rule

23   12(b)(6), or alternatively, for a more definite statement pursuant to Rule 12(e), Dkt. No. 51,[2] (4)

24

25   _____

     [1] Because the Court has required Plaintiffs and Open Door to submit post-hearing briefs with
26   respect to this motion, it will be resolved by separate order.

27   [2] For ease of reference, the Court will refer to the first three motions as "Open Door's motions,"
     though they have been filed on behalf of the Open Door entity and two affiliated individual
28   defendants, Larry Clark, and Jerrimy Farris, who, collectively, will also be referred to as "Open
     Door."  See Dkt. Nos. 49, 50, and 51.

1   20/20's motion to dismiss Plaintiffs' complaint, or alternatively, for a more definite statement, Dkt.

2   No. 53, (5) 20/20's motion to compel arbitration and dismiss, or alternatively, stay claims, Dkt.

3   No. 54, and (6) Plaintiffs' motion for notice to be issued to similarly situated employees pursuant

4   to 29 U.S.C. § 216(b), Dkt. No. 21.

5          The Court held a hearing on the motions on March 17, 2016.  Having considered the

6   papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel at

7   the hearing, the Court rules on the various motions as follows:  (1) Open Door's motion to dismiss

8   based on forum non conveniens and Rule 12(b)(3) is DENIED, (2) Open Door's motion to dismiss

9   pursuant to Rule 12(b)(6) is GRANTED, (3) 20/20's motion to dismiss Plaintiffs' complaint is

10  GRANTED, (4) 20/20's motion to compel arbitration and stay claims is GRANTED, and (5)

11  Plaintiffs'  motion for notice to be issued to similarly situated employees pursuant to 29 U.S.C. §

12  216(b) will be HELD IN ABEYANCE pending the filing of the third amended complaint and the

13  parties' meet and confer regarding class scope and notice issues.

## I.      BACKGROUND

### A.      Factual background

16         Plaintiffs Carlos Conde ("Conde"), Shikwana Jennings ("Jennings"), and Lisa Drake

17  ("Drake") previously worked for 20/20 Communications, Inc., Open Door Marketing, LLC,

18  Jerrimy Farris, and Larry Clark ("Defendants").[3]  (2d Am. Compl. ¶¶ 9-11, 15-18, Dkt. No. 61.)

19  Defendants classified Plaintiffs as independent contractors.  (*Id.* ¶ 29.)

20         Plaintiffs promoted Defendants' cell phones and wireless service plans.  (*Id.* ¶ 19.)  They

21  began their workdays at 8 or 9 am each day, Monday through Saturday.  (*Id.* ¶ 31.)  Plaintiffs

22  typically worked about 60-72 hours per week and received compensation on a commission-only

23  basis, earning between $4 and $10 for each qualified customer that signed up for Defendants'

24  services or products.  (*Id.* ¶¶ 37, 41.)  Plaintiffs were also responsible for paying a weekly $10 fee

25  to use Defendants' equipment, such as the electronic tablets the employees used to market

26

27  _____

28  [3]Conde worked for Defendants from February 2014 to May 2015.  SAC ¶ 9.  Jennings worked for Defendants from February 2015 through June 2015.  *Id.* ¶ 10.  Drake worked for Defendants from August 2014 through May 2015.  *Id.* ¶ 11.

United States District Court
Northern District of California

1  Defendants' products and services to clients.  (*Id.* ¶¶ 33, 38.)  According to Plaintiffs, this

2  compensation scheme provided for earnings below the federal and California minimum wage and

3  deprived them of payment for overtime hours worked.  (*Id.* ¶¶ 40, 41.)

4      From September 2012 through at least September 2014, Plaintiffs contracted directly with

5  20/20.  (*Id.* ¶ 21.)  When Defendants formed Open Door in September 2014, Plaintiffs began

6  contracting directly with that new entity.  (*Id.* ¶ 23.)  20/20, however, continued to control the

7  employees "providing face-to-face marketing services for its clients, and was involved in Open

8  Door's day-to-day operations."  (*Id.* ¶ 24.)  Plaintiffs allege that "Defendants jointly set and

9  implement policies and procedures for the workers' performance, compensation, and discipline."

10  (*Id.* ¶ 20.)  Plaintiffs also allege that Open Door and 20/20 "hold weekly meetings, in which they

11  discuss, among other items, theweekly [*sic*] number of customers signed up for clients' products

12  and services, new hires to provide face-to-face marketing services for clients, and Open Door's

13  standard operating procedures."  (*Id.* ¶ 26.)  Plaintiffs further allege that "Defendants jointly set

14  daily and weekly targets for their workers, who can be terminated for failure to meet these goals."

15  (*Id.* ¶¶ 28, 36.)

16      **B.    Procedural background**

17      Plaintiffs commenced this action on September 8, 2015.  (Compl., Dkt. No. 1.)  They filed

18  the operative second amended complaint on January 7, 2016.  (SAC, Dkt. No. 61.)  Plaintiffs

19  assert claims for (1) failure to pay minimum wage in violation of the Fair Labor Standards Act

20  ("FLSA"), 29 U.S.C. § 201 *et seq.*, (2) failure to pay overtime in violation of the FLSA, (3) failure

21  to pay minimum wage and overtime in violation of California Labor Code sections 1194 and

22  1197, (4) failure to provide workers with itemized wage statements in violation of California

23  Labor Code section 226, (5) failure to reimburse workers for expenses necessary to perform their

24  jobs in violation of California Labor Code section 2802, and (6) penalties under the Private

25  Attorneys General Act ("PAGA"), California Labor Code section 2698 *et seq.*[4]  (SAC ¶ 42, ¶ 43,

26  ¶¶ 44-52, ¶¶ 53-61, ¶¶ 62- 70, ¶¶ 71-74.)

27

28  [4] Jennings asserts the PAGA claim on behalf of Defendants' California workers.  SAC ¶ 5, 71.

3

United States District Court
Northern District of California

1    Following the commencement of this action, the parties filed a series of motions.  On

2    October 23, 2015, Plaintiffs filed a motion for notice to be issued to similarly situated employees

3    pursuant to 29 U.S.C. § 216(b).  (Dkt. No. 21.)  Defendants filed a response to the motion on

4    December 7, 2015, and Plaintiffs filed their reply on December 21, 2015.  (Dkt. Nos. 52, 56, 59.)

5    On December 7, 2015, Open Door filed a motion to compel arbitration and dismiss, or

6    alternatively, stay claims, a motion to dismiss based on forum non conveniens and Rule 12(b)(3),

7    and a motion to dismiss pursuant to Rule 12(b)(6), or alternatively, for a more definite statement

8    pursuant to Rule 12(e).  (Dkt. Nos. 49, 50, 51.)  Plaintiffs filed their response to the motion to

9    dismiss based on forum non conveniens and Rule 12(b)(3) on December 24, 2015 and their

10   response to the remaining motions on January 7, 2016.  (Dkt. Nos. 60, 62, 65.)  Open Door filed

11   replies on January 21, 2016.  (Dkt. Nos. 72, 73, 74.)

12   20/20 also filed a motion to dismiss Plaintiffs' complaint, or alternatively, for a more

13   definite statement and a motion to compel arbitration and dismiss, or alternatively, stay claims on

14   December 7, 2015.  (Dkt. Nos. 53, 54.)  Plaintiffs responded to the motions on January 7, 2016,

15   and 20/20 filed replies on January 21, 2016.  (Dkt. Nos. 70, 71.)

16   The Court held a hearing on all motions on March 17, 2016.

## II.    DISCUSSION

### A.    Open Door's motion to dismiss pursuant to forum non conveniens and Rule 12(b)(3)

19   Plaintiffs Jennings and Drake signed independent contractor agreements with Open Door

20   on March 5, 2015 and March 30, 2015, respectively.  (Clark Decl. ¶¶ 4, 5 & Exs. 1, 2, Dkt. No.

21   50-2.)  Both agreements contain the following provision:

22   
> This agreement, its validity, construction and enforcement shall be governed by and
> construed in accordance with the laws of the State of Alabama.  Venue for
> resolution of any dispute arising from the engagement of contractor by company
> shall lie exclusively in Bibb County, Alabama.

25   (Clark Decl., Exs. 1 & 2 ¶ 22, Dkt. No. 50-2.)  Relying on this forum selection clause, Open Door

26   seeks dismissal of this action based on forum non conveniens and Rule 12(b)(3).[5]  (Dkt. No. 50.)

27   

---

28   [5] As an initial matter, to the extent Open Door seeks to dismiss Plaintiffs' complaint pursuant to
Rule 12(b)(3), its motion is improper.  In *Atlantic Marine Construction Company, Inc. v. United*

4

United States District Court
Northern District of California

1    Federal law applies to the interpretation of a forum selection clause, and courts look to

2    general principles of contract interpretation for guidance. *Manetti–Farrow, Inc. v. Gucci America,*

3    *Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  "Contract terms are to be given their ordinary meaning,

4    and when the terms of a contract are clear, the intent of the parties must be ascertained from the

5    contract itself.  Whenever possible, the plain language of the contract should be considered first."

6    *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).  "The

7    fact that the parties dispute a contract's meaning does not render the contract ambiguous; it is only

8    ambiguous if reasonable people could find its terms susceptible to more than one interpretation."

9    *Id.*

10    Open Door argues that the forum selection clause applies to this case, that the clause is

11    valid and enforceable, and that it justifies dismissal of this action so that the case can be litigated

12    in Alabama.  (Dkt. No. 50 at 4-10.)  In their opposition, Plaintiffs argue that the forum selection

13    clause does not apply to their claims.  (Dkt. No. 60 at 4.)  Plaintiffs also argue that enforcing the

14    forum selection clause would be unreasonable, deprive them of their day in court, and violate

15    public policy given the disparity between the power and business expertise of the parties.  (*Id.* at

16    4-11.)

17    Plaintiffs specifically contend that the language "any dispute arising from the engagement

18    of the contractor" is "fairly narrow" and does not embrace the claims asserted in this action.  (*Id.* at

19    4 & n.5.)  Case law supports this contention.  Analogous Ninth Circuit cases concerning

20    arbitration clauses call for the narrow interpretation of phrases such as "arising under," "arising out

21    of," and "arising hereunder" as compared to the broader reading afforded to phrases like "relating

22    *States District Court for the Western District of Texas*, --- U.S. ---, 134 S. Ct. 568, 187 L. Ed. 2d
487 (2013), the Supreme Court clarified that Rule 12(b)(3) allows for dismissal only when venue

23    is "wrong" or "improper." *Id.* at 577.  Venue is only "wrong" or "improper" if the court in which
the case was brought fails to satisfy the requirements of federal venue laws.  Open Door has not

24    advanced any such argument here, instead relying exclusively on the existence of the forum
selection clause. *See* Dkt. No. 50 at 9 ("Under Rule 12(b)(3) of the Federal Rules of Civil

25    Procedure, a defendant may move for dismissal based on improper venue. Fed. R. Civ. P.
12(b)(3).  Such a motion may be based on a governing forum selection clause.").  As the existence

26    of a forum selection clause does not render venue "wrong" or "improper" within the meaning of
Rule 12(b)(3), and because the "appropriate way to enforce a forum-selection clause pointing to a

27    state or foreign forum is through the doctrine of forum non conveniens," *see Atlantic Marine*, 134
S. Ct. at 578-79, the Court has limited its analysis accordingly.

28

to." *See Cape Flattery Limited v. Titan Maritime, LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (claim based on a federal statute was not subject to arbitration where agreement provided for the arbitration of "[a]ny dispute arising under this Agreement" in light of Ninth Circuit precedent that mandates "a narrow interpretation of a clause providing for arbitration of all disputes 'arising under' an agreement"); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (in the absence of the "relating to" language in the arbitration provision, the Ninth Circuit had "no difficulty finding that 'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself"). *Cf. Manetti-Farrow, Inc.*, 858 F.2d at 514 (claims relating to the rights and duties in contract were not independent of the agreement and fell within the scope of forum selection clause).[6]

Thus, while Open Door urges a broad reading of the forum selection clause based on the use of the phrase "engagement of contractor by company," the preceding phrase "any dispute arising from," limits its scope and prevents a reading under which the clause embraces Plaintiffs' wage and hour claims. Put another way, the "engagement of the contractor" is memorialized in the independent contractor agreement, but that agreement need not be interpreted to decide the issue in this case—whether Plaintiffs were misclassified. The forum selection clause, therefore, does not apply to the claims asserted in this action.[7] Accordingly, Open Door's motion for

---

[6] Given this Ninth Circuit authority, Open Door's reliance on two out-of-circuit decisions, *BMR & Associates, LLP v. SFW Capital Partners, LLC*, 92 F. Supp. 3d 128 (S.D.N.Y. 2015) and *Anselmo v. Univision Statement Group, Inc.*, No. 92 Civ. 1471 (RLC), 1993 WL 17173 (S.D.N.Y. 1993) is misplaced. Open Door cites these cases for the proposition that a forum selection clause should not be defeated by artful pleading where the parties' disputes stem from their contractual arrangement. Dkt. No. 74 at 7. By the same token, "[t]he Ninth Circuit sent a strong message that contractual schemes to avoid the California Labor Code will not be tolerated." *See Quinonez v. Empire Today, LLC*, No. C 10-02049 WHA, 2010 WL 4569873, at * 2 (N.D. Cal. Nov. 4, 2010) (citing *Narayan v. EGL, Incorporated*, 616 F.3d 895, 899 (9th Cir. 2010)). That concern is paramount here.

[7] In light of this ruling, the Court need not address the parties' arguments regarding the enforceability of the forum selection clause under the framework prescribed by the Supreme Court in *Atlantic Marine*. In this respect, Open Door's reliance on *Monastiero v. appMobi, Inc.*, No. C13-05711 SI, 2014 WL 1991564, at *1 (N.D. Cal. May 15, 2014) is misplaced. In that case, the court granted the defendant's motion to dismiss based on forum non conveniens because the plaintiff did not show that enforcement of the forum selection clause would be unreasonable or unjust without reference to private interest factors. *Id.* at *6. The plaintiff in that case, however, did not argue, as Plaintiffs do here, that the forum selection clause did not apply to his claims. On

United States District Court
Northern District of California

<div style="float:left">United States District Court<br>Northern District of California</div>

1  dismissal on the basis of the forum selection clause is DENIED.

2       **B.**     **20/20's motion to compel arbitration and dismiss, or alternatively, stay claims**

3       On February 5, 2014, Conde signed a mutual arbitration agreement with 20/20. (Sohn

4  Decl., Ex. 1, Dkt. No. 49-1.) The agreement provides, in pertinent part:

5       As a condition of 20/20 Companies or its subsidiaries or affiliates (collectively, the "Company") retaining the services of the undersigned individual

6  ("Sales Rep") as an independent contractor, and in order to avoid the burdens and delays associated with court actions, Sales Rep and the Company voluntarily and

7  knowingly enter into this Mutual Arbitration Agreement ("Agreement"):

8  1.     Except as provided below, Sales Rep and the Company, on behalf of their affiliates, successors, heirs, and assigns, both agree that all disputes and claims

9  between them, including those relating to Sales Rep's relationship with the Company and any termination thereof, and including claims by Sales Rep against

10  the Company's subsidiaries, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral

11  arbitrator as described herein, and that judgment upon the arbitrator's award may be entered in any court of competent jurisdiction. Claims subject to arbitration under

12  this Agreement include without limitation claims for breach of any express or implied contract; discrimination, harassment, or retaliation; wages, overtime,

13  benefits, or other compensation; violation of public policy; personal injury; and tort claims including defamation, fraud, and emotional distress. Except as expressly

14  provided herein, the Company and Sales Rep voluntarily waive all rights to trial in court before a judge or jury on all claims between them.

15

16  (*Id.*)

17       Based on this agreement, 20/20 moves to compel arbitration and dismiss, or alternatively,

18  stay Conde's individual and class claims. (Dkt. Nos. 49, 54.) Plaintiffs do not oppose 20/20's

19  motion or its request to stay Conde's claims pending arbitration, and that motion is, therefore,

20  GRANTED.[8] (Dkt. No. 63 at 1.) As discussed at the hearing on the matter, the Court will stay

21  _____

22  that issue, then, the case is not helpful to Open Door. *See Telesocial Inc. v. Orange S.A.*, No. 14-CV-03985-JD, 2015 WL 1927697, at *3 (N.D. Cal. Apr. 28, 2015) ("But the condition precedent

23  to Orange's forum non conveniens argument is that the NDA forum clause applies to Telesocial's claims in the FAC. If the claims do not fall within the scope of the forum selection clause, the

24  Court need not reach the forum non conveniens issue, and Orange's lengthy discussion of *Atlantic Marine* is nothing more than interesting but irrelevant commentary.").

25  [8] Rather than filing oppositions to some of the motions filed in this case, both sides have, at times,

26  simply "assented" to the granting of the relief requested. *See* Dkt. No. 63 at 1 ("Plaintiffs assent to Defendant 20/20 Communications, Inc.'s ('20/20') Motion to Compel Arbitration (Dkt. No. 54),

27  only as to claims brought by Plaintiff Carlos Conde against Defendant 20/20, and to 20/20's alternative request to stay these claims pending the arbitration.") (footnote omitted); Dkt. No. 65 at

28  3 ("Plaintiffs therefore assent to the dismissal of their claims against Open Door prior to September 2014, and oppose the dismissal of their claims against Jerrimy Farris and Larry Clark

1    Conde's claims during the pendency of the arbitration proceedings, which Conde shall commence

2    within 90 days of this order.  If Conde does not comply with this deadline, 20/20 may seek a

3    dismissal of Conde's claims with prejudice.  The parties shall file a joint status report every 90

4    days to update the Court on the status of the arbitration.

**C.      Defendants' motions to dismiss for failure to state a claim, or alternatively, for a more definite statement**

Defendants also move to dismiss Plaintiffs' complaint for failure to state a claim.  (Dkt.

Nos. 51, 53.)  In the alternative, Defendants move for a more definite statement.  (Dkt. Nos. 51,

53.)

**1.      20/20's motion**

20/20 moves to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal

sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001).

In considering such a motion, a court must "accept as true all of the factual allegations

contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the

United States District Court
Northern District of California

---

prior to September 2014."); Dkt. No. 75 at 2 ("Defendants 20/20 Communications, Inc. ('20/20'),
Open Door Marketing, LLC ('ODM'), Jerrimy Farris, and Larry Clark (collectively, 'Defendants')
agree, and assent to a declaration by the Court, that plaintiffs who performed services for 20/20
and/or ODM in California may bring claims under California statutory law arising out of those
services, and that those claims are not affected by the choice of law clause in the Independent
Contractor Agreement between plaintiffs and ODM.").  The parties shall refrain from engaging in
this practice going forward.  If a party does not intend to oppose a motion, it shall enter into a
stipulation with the opposing side so as to avoid unnecessary motion practice.  *See* N.D. Cal.
Guidelines for Prof'l Conduct ¶ 10.b. ("A lawyer should not engage in conduct that forces
opposing counsel to file a motion that he or she does not intend to oppose.").

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

Here, 20/20 argues that (1) Plaintiffs fail to identify the entity responsible for the conduct complained of, (2) Plaintiffs' allegations are conclusory, (3) Plaintiffs' few non-conclusory allegations do not establish an employment relationship between Plaintiffs and 20/20, and (4) Plaintiffs' allegations do not establish a joint employer relationship under the FLSA or under California law. (Dkt. No. 53 at 3-13.)

In their opposition, Plaintiffs argue that the following allegations are sufficient to defeat 20/20's motion:

After the formation of Open Door, 20/20 continued to control the workers providing face-to-face marketing services for its clients, and was involved in Open Door's day-to-day operations.

Defendants jointly set and implement policies and procedures for the workers' performance, compensation, and discipline.

Defendants' workers are supervised closely by Defendants' agents. They are instructed in the details of their job performance, hours and location worked, and are monitored and reviewed frequently. Defendants jointly set daily and weekly

9

targets for their workers, who can be terminated for failure to meet these goals.

Open Door and 20/20 hold weekly meetings, in which they discuss, among other items, the weekly number of customers signed up for clients' products and services, new hires to provide face-to-face marketing services for clients, and Open Door's standard operating procedures.

Defendants' workers perform core work that is necessary to Defendants' business, namely providing marketing services.

20/20 enters directly into contracts to provide face-to-face marketing services for its clients, such as Assurance Wireless and Access Wireless.

20/20 is paid directly by its clients, such as Assurance Wireless and Access Wireless, for each new customers [*sic*] that workers contracted with Open Door sign up for their products and services.

20/20 supplies the electronic tablets and information technology support for the workers providing face-to-face marketing services for its clients.

(Dkt. No. 64 at 4-5.)

What these allegations fail to do, however, is identify the particular conduct attributable for each defendant.  Plaintiffs' use of the term "Defendants" throughout the complaint is problematic in this respect, even if the allegations in the complaint are otherwise sufficient to establish a joint employer relationship between Defendants.  Plaintiffs have thus failed to give each defendant fair notice of the claims asserted against them and the grounds upon which those claims rest.  *See* Fed. R. Civ. p. 8(a)(2).  This warrants dismissal of Plaintiffs' complaint.  Additionally, to the extent Plaintiffs wish to establish the sufficiency of the allegations in the complaint by reference to content found in certain declarations, e.g., that 20/20 arranges interviews and follows-up with Open Door's managers regarding results, that Clark received weekly reports of Open Door's workers' pay, etc., Plaintiffs shall include allegations based on that content in the complaint itself.

Accordingly, 20/20's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

### 2.    Open Door's motion[9]

Open Door also moves to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6).  (Dkt. No. 51.)  Open Door argues that Plaintiffs' complaint does not contain any allegations that Open

---

[9] To the extent Open Door joins 20/20's motion, the Court need not reiterate the discussion set forth above as to arguments separately advanced by 20/20.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Door had any control over Plaintiffs prior to September 2014.  (Dkt. No. 51 at 3.)  It contends that

2   under these circumstances, Plaintiffs cannot allege that Open Door was their joint employer prior

3   to September 2014 or that it is liable for any damages prior to that date.  (*Id.*)  According to Open

4   Door, this Court should thus dismiss Plaintiffs' joint employer claims against Defendants.  (*Id.*)

5          In their opposition, Plaintiffs "assent to the dismissal of their claims against Open Door

6   prior to September 2014[.]"  (Dkt. No. 65 at 2.)  Plaintiffs, however, oppose the dismissal of their

7   claims against Jerrimy Farris and Larry Clark prior to September 2014 on the ground that both

8   individuals were agents of 20/20 during the class period, that is, September 2012 to the present.

9   (*Id.*)  Accordingly, Open Door's motion to dismiss is granted as to claims prior to September 2014.

10         To the extent that Farris and Clark were purportedly acting as agents of 20/20 during the

11  class period, Plaintiffs rely exclusively on their allegations that Farris was 20/20's Director of

12  Sales from November 2013 through October 2014 and Clark was 20/20's Vice President of Sales

13  from 2001 to the present.  (*See* Dkt. No. 65 at 2.)  This, according to Plaintiffs, makes Farris and

14  Clark "liable as agents of 20/20 during the class period of September 2012 to the present."  (*Id.*)

15  Plaintiffs, however, do not point to any allegations describing what conduct Farris and Clark

16  engaged in that would expose them to liability for the wage and hour violations Plaintiffs allege.

17         On this ground, Open Door's motion to dismiss is GRANTED WITH LEAVE TO
    AMEND.

18         **D.      Plaintiffs' motion for notice to be issued to similarly-situated employees**

19         The FLSA requires employers to pay their employees a minimum wage.  29 U.S.C. §

20  206(a).  If an employer fails to pay minimum wage, § 216(b) allows an aggrieved employee to

21  bring a collective action on behalf of himself and "similarly situated" employees.  *Id.* § 216(b).  A

22  collective action permits plaintiffs to lower the cost of vindicating their rights and promotes the

23  efficient use of judicial resources.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170

24  (1989).  To achieve the benefits of proceeding collectively, employees must receive notice of the

25  pendency of the collective action.  *See id.*  "Court authorization of notice serves the legitimate goal

26  of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the

27  action."  *Id.* at 172.  "Determining whether a collective action is appropriate is within the

28

1    discretion of the district court."  *Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 837

2    (N.D. Cal. 2010).

3    "[T]he majority of district courts in this Circuit use a two-step approach for determining

4    whether employees are similarly situated under Section 216(b)."  *Woods v. Vector Marketing*

5    *Corp.*, No. C-14-0264 EMC, 2015 WL 1198593, at *2 (N.D. Cal. Mar. 16, 2015).  The first step,

6    "whether conditional certification is proper so that notice may be sent to potential plaintiffs" is at

7    issue here.[10]  *See Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. Aug. 16,

8    2004).  "The standard for the first step is a lenient one that typically results in certification."

9    *Woods*, 2015 WL 1198593, at *3 (quotations and citations omitted).  "The sole consequence of

10   conditional certification is the sending of court-approved written notice to employees . . . ."  *Id.*

11   (citation omitted).

12   Under the "lenient" conditional certification standard, the plaintiffs must simply establish

13   that an "identifiable factual or legal nexus binds together the various claims of the class members

14   in a way that hearing the claims together promotes judicial efficiency and comports with the broad

15   remedial policies underlying the FLSA."  *Russell v. Wells Fargo Co.*, No. C07-3993 CW, 2008

16   WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) (quotation omitted).  At this stage, "courts usually

17   rely only on the pleadings and any affidavits that have been submitted."  *Benedict v. Hewlett-*

18   *Packard Co.*, 13-CV-00119, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014) (quotation

19   omitted).

20   In this case, Plaintiffs ask that the Court conditionally certify a class and authorize notice[11]

21   to "anyone who has worked promoting cell phones and wireless service plans for [20/20

22   Communications and Open Door Marketing] anywhere in the United States during the last three

23   years."  (Dkt. No. 21-1; Dkt. No. 87-1.)  Plaintiffs argue that they are entitled to conditional

24

25   [10] "The second-step usually occurs after discovery is complete, at which time the defendants may
26   move to decertify the class."  *Harris*, 716 F. Supp. 2d at 837 (quotation and citations omitted).

27   [11] Plaintiffs also ask that the Court approve their proposed notice and notice procedures, order the
     production of a list of potential opt-in plaintiffs, and require Defendants to post a notice online on
28   its website, among other things, Dkt. No. 21 at 17-20.

United States District Court
Northern District of California

12

1    certification based on Defendants' uniform practice of not paying minimum wage and overtime

2    compensation and their exercise of control over the individuals who promote phones and services,

3    which includes the discretion to terminate individuals who do not meet the company's new

4    customer quotas.  (Dkt. No. 21 at 9.)  Plaintiffs have offered several declarations to this effect.[12]

5         Shikwana Jennings declares that she began working for 20/20 in February 2015, as an

6    outreach agent.  (Jennings Decl. ¶ 2, Dkt. No. 21-4.)  "During the entire time [she] worked for

7    20/20 Companies, [she] was classified as an independent contractor during most of this time, with

8    the exception of one W-2 paycheck [she] received in April."  (*Id.* ¶ 5.)  Her supervisor "explained

9    that it was an expectation of the job that [she] work 6 days per week."  (*Id.* ¶ 6.)  She worked "70-

10   80 hours a week" and "was not paid overtime."  (*Id.* ¶ 14.)  She "usually made $500 a week on

11   average."  (*Id.* ¶ 18.)

12        The statements in Lisa Drake's declaration are similar.  (Drake Decl., Dkt. No. 21-5.)  In

13   August 2014, she began working for 20/20 as an outreach agent.  (*Id.* ¶ 3.)  In October 2014, she

14   was informed "that the office was becoming part of Open Door Marketing, which is part of the

15   20/20 Companies."  (*Id.* ¶ 4.)  She worked as an outreach agent until December 2014, then again

16   from March 2015 to May 2015.  (*Id.* ¶ 5.)  She states that she was classified as an independent

17   contractor the entire time she "worked for 20/20 Companies and Open Door Marketing."  (*Id.* ¶ 7.)

18   She was told she "was expected to work 6 days a week."  (*Id.* ¶ 8.)  She "worked 45 hour a week

19   most weeks" and earned about $300-650 per week.  (*Id.* ¶¶ 15, 20.)  She was "not paid overtime

20   for any hours worked in excess of 40 a week."  (*Id.* ¶ 20.)

21        Patrice Webb has also provided a declaration.  (Webb Decl., Dkt. No. 21-6.)  She worked

22   as an outreach agent for Open Door between February and July 2015.  (*Id.* ¶ 3.)  She was told

23   "that the 20/20 Companies is the parent company of Open Door Marketing."  (*Id.* ¶ 4.)  She was

24   classified as an independent contractor the entire time she worked for Open Door.  (*Id.* ¶ 6.)  She

25   was told that she "was expected to work 6 days a week," and she worked 45-60 hours a week.  (*Id.*

26   ¶¶ 7, 13.)  Her first week, she earned $1174.  (*Id.* ¶ 18.)  She earned $758 for her second week,

27

28   _____
     [12] The Court has disregarded Carlos Conde's declaration, as his claims are subject to arbitration.
     *See* Discussion *supra* Part II.B.

United States District Court
Northern District of California

13

1    after which her checks would fluctuate between $500 and $100.  (*Id.*)  She did not receive pay for

2    any overtime hours worked.  (*Id.*)

3         20/20 opposes Plaintiffs' motion on three grounds.[13]  First, 20/20 argues that Plaintiffs have

4    not demonstrated that an employer-employee relationship exists between 20/20 and any

5    individuals who performed services for Open Door such that 20/20 may be held liable for the

6    FLSA claims asserted by these individuals.  (Dkt. No. 52 at 4.)  Second, 20/20 argues that, like

7    Conde, any putative class member who worked directly for 20/20 must arbitrate his or her claims

8    and thus lacks standing to assert claims in this action.  (*Id.*)  Third, 20/20 argues that Plaintiffs are

9    not entitled to conditional certification because Plaintiffs' own declarations show that they are

10   exempt employees within the meaning of the FLSA's outside sales exemption.  (*Id.*)[14]

11        20/20's first and third arguments are not grounds on which to deny Plaintiffs' motion for

12   conditional certification.  These arguments are directed at the merits of the action, which 20/20 is

13   free to raise at a later stage.[15]  *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D.

14   Cal. 2007) (declining to evaluate the merits of claims at the conditional certification stage);

15   *Leuthold*, 224 F.R.D. at 467 (noting that it is at the second step of the analysis that the court

16   considers "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the

17   various defenses available to the defendants with respect to the individual plaintiffs; and fairness

18   and procedural considerations") (citations omitted); *see also Labrie v. UPS Supply Chain*

19   *Solutions, Inc.*, No. C09-3182 PJH, 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009) ("The court

20   finds that SCS's arguments raise issues primarily going to the merits and are more appropriately

21

22   [13] Open Door has filed a one-page opposition to the motion for notice in which it incorporates the
     arguments advanced in its motion to dismiss and further joins certain portions of 20/20's response.
23   Dkt. No. 56.  Open Door also reiterates its position that Plaintiffs have not properly alleged an
     employment relationship between 20/20 and any individuals prior to September 2014.  *Id.*

24   [14] In the alternative, 20/20 argues that the Court should substantially narrow the scope of the
     putative class and revise Plaintiffs' draft notice.  Dkt. No. 52 at 1.  It also requests that the Court
25   order the parties to meet and confer regarding the method and content of the notice.  *Id.* n.1.  It is
     unclear why the parties did not do so prior to filing their various motions.  In any event, as set
26   forth in this order, the parties will meet and confer and resolve any issues concerning the scope of
     the proposed class and notice-related issues.
27

28   [15] Similarly, to the extent 20/20 maintains that Drake never worked for the company, it may file
     the appropriate dispositive motion.

14

United States District Court
Northern District of California

1    addressed on a motion to decertify or motion for summary judgment once notice has been given,

2    the deadline to opt-in has passed, and discovery is closed."). 20/20's second argument also fails.

3    To the extent any employee working directly for 20/20 did sign an arbitration agreement, the

4    company will be free to move to dismiss the claims of any such employee who attempts to join

5    this collective action. Or better yet, the parties can meet and confer to ensure that any such

6    individuals are not improperly included in the class. The Court, however, will not exclude

7    potential class members based only on 20/20's assertion that these yet-to-be identified individuals

8    signed an arbitration agreement.

9            In light of the declarations offered by Plaintiffs, the Court finds that Defendants' alleged

10   uniform practice of not paying minimum wage and overtime compensation constitutes an

11   "identifiable factual or legal nexus" that likely connects the various claims of potential class

12   members. This policy may be sufficiently uniform to make the Plaintiffs "similarly situated" to a

13   proposed class, but not necessarily the class Plaintiffs propose, i.e., anyone who has worked

14   promoting cell phones and wireless service plans for 20/20 Communications and Open Door

15   Marketing anywhere in the United States during the last three years.

16           In light of this, Defendants' suggestion that the parties be required "to meet and confer

17   concerning the method and content of the notice to address the defects in Plaintiffs' proposal," is

18   well-taken. Accordingly, Plaintiffs' motion for notice to be issued to similarly situated employees

19   pursuant to 29 U.S.C. § 216(b) will be HELD IN ABEYANCE pending the filing of the third

20   amended complaint and the parties' meet and confer on the scope of the class and all notice-related

21   issues, including the form of the notice, the proposed notice time period, production of a list of

22   potential opt-in plaintiffs' names and contact information, methods of transmitting the notice, the

23   length of the opt-in period, and notice reminders. Once the parties have reached an agreement on

24   the foregoing, they shall file their stipulated materials. In the unlikely event that the parties cannot

25   reach an agreement, each party may submit a supplemental brief detailing their respective

26   proposals along with supporting legal authority. Upon receipt of the parties' supplemental

27   materials, the Court will schedule a further hearing.

28   ///

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### III.     CONCLUSION

2      For the reasons set forth above, (1) Open Door's motion to dismiss based on forum non

3  conveniens and Rule 12(b)(3) is DENIED, (2) Defendants' motions to dismiss are GRANTED

4  WITH LEAVE TO AMEND, (3) 20/20's motion to compel arbitration and stay claims is

5  GRANTED, and (4) Plaintiffs' motion for notice to be issued to similarly situated employees

6  pursuant to 29 U.S.C. § 216(b) will be HELD IN ABEYANCE pending the filing of the third

7  amended complaint and the parties' meet and confer regarding class scope and notice issues.

8  Plaintiff shall file a third amended complaint within 30 days of this order.

9      IT IS SO ORDERED.

10  Dated: 04/12/2016

11  _____
KANDIS A. WESTMORE
United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16