HAROLD LICHTEN, *pro hac vice* anticipated
(hlichten@llrlaw.com)
JILL KAHN, *pro hac vice* anticipated
(jkahn@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

MATTHEW D. CARLSON (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SHIKWANA JENNINGS and LISA DRAKE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

20/20 Communications, Inc., Open Door Marketing, LLC, Jerrimy Farris, and Larry Clark,

Defendants.

**Case No.: 15-cv-04080-KAW**

**FOURTH AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

**Hon. Kandis A. Westmore**

**Case Filed: September 8, 2015**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. This class and collective action is brought by Shikwana Jennings and Lisa Drake (collectively, "Plaintiffs"), on behalf of all similarly situated individuals throughout the United States who have worked for 20/20 Communications, Inc. ("20/20"), Open Door Marketing, LLC ("ODM") ("Corporate Defendants"), and individual Defendants Jerrimy Farris and Larry Clarke ("Individual Defendants") (collectively, "Defendants"), to promote free cell phones and wireless service plans to low-income individuals who meet the plans' requirements.

2. Plaintiffs and similarly situated workers have been misclassified as independent contractors by Defendants, who, in so doing, have violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Cal. Lab. Code §§ 1194 and 1197 by failing to pay them minimum wage for all hours worked, and overtime. Additionally, Defendants have violated Cal. Lab. Code § 226(a) by failing to provide Plaintiffs and similarly situated workers with itemized wage statements, Cal. Lab. Code § 2802 by requiring Plaintiffs and similarly situated workers to pay expenses that should have been borne by their employer(s), and Cal. Lab. Code § 203 by failing to pay Plaintiffs all wages due at the time of termination.

3. Accordingly, Plaintiffs bring their claims under the FLSA on behalf of similarly situated individuals who worked as independent contractors for 20/20 Communications, Inc., and/or Open Door Marketing, LLC, marketing free cell phones and wireless service plans to potential consumers face-to-face in California and Nevada since September 24, 2013, excluding individuals who worked in Nevada and signed arbitration agreements, who may choose to opt-in to this action pursuant to 29 U.S.C. § 216(b) ("FLSA Class Members"). Additionally, Plaintiff Jennings brings her California state law claims as class actions under Rule 23 of the Federal Rules of Civil Procedure on behalf of individuals who worked as independent contractors for 20/20 Communications, Inc., and/or Open Door Marketing, LLC ("Open Door"), marketing free cell phones and wireless service plans to potential consumers face-to-face in California from

September 2012 to the present, who did not sign arbitration agreements with 20/20 ("California Class Members"). Where appropriate, FLSA Class Members and California Class Members are referred to collectively as "Class Members."

4. Plaintiff Jennings also brings a representative action under the California Private Attorneys General Act ("PAGA") on behalf of Defendants' similarly aggrieved employees in California.

5. Plaintiffs seek damages or restitution for all unpaid wages, statutory and civil penalties, and all other relief to which they are entitled.

## II. JURISDICTION AND VENUE

6. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Plaintiffs have brought claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

7. This Court has supplemental jurisdiction over Plaintiffs' California state law claims and PAGA claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

8. The Northern District of California is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Jennings and others similarly situated workers worked for Defendants in Oakland, California, where a substantial part of the events giving rise to these claims occurred.

## III. PARTIES

9. Plaintiff Shikwana Jennings is an adult resident of California. Ms. Jennings was hired by ODM in February 2015, and worked for Defendants until June 2015 in their Oakland, California location.

10. Plaintiff Lisa Drake is an adult resident of Nevada. Ms. Drake was hired by ODM in October 2014, and worked for Defendants until May 2015 in their Las Vegas, Nevada location.

11. Defendant Larry Clark is an adult resident of Alabama. Mr. Clark is currently the president of ODM, and was employed by 20/20 as Vice President of Sales from 2001 through at least November 2015. Mr. Clark was also employed by 20/20 as Vice President of Lifeline Cellular Services from 2013 to 2014. Mr. Clark has also been the President of ODM since its creation in October 2014.

12. Defendant Jerrimy Farris is an adult resident of Texas. Mr. Farris is currently the Vice President of ODM, and was employed by 20/20 in various capacities, including as Director, from 2006 to 2011, then again from 2013 to 2014. Mr. Farris has held the title of Vice President of Open Door Marketing since December 2014.

13. For the reasons set forth herein, Individual Defendants are liable under both the FLSA, as well as for California wage and hour violations pursuant to Cal. Lab. Code § 558.1.

14. Defendant 20/20 is a Texas corporation with its principal place of business located at 3575 Lone Star Circle, Suite 200, Fort Worth, Texas 76177.

15. Defendant ODM is an Alabama corporation with is principal place of business located at 527 Ward Avenue, Brent, Alabama 35034.

## IV. STATEMENT OF FACTS

16. In approximately, September 2012, 20/20 began hiring Class Members as independent contractors to promote wireless service plans and cellular phones to low-income communities.

17. From September 2012 through October 2014, 20/20 and Individual Defendants who worked for 20/20 as its Director and Vice President of Sales, had the following relationship with Class Members:

a. 20/20 and Individual Defendants retained the right to control the manner in which Class Members performed their marketing work, including: retention of the right to terminate Class Members; setting and monitoring performance goals for Class Members; setting hours and location of work

for Class Members; requiring Class Members to send supervisors a picture of themselves at work each morning to prove their attendance at the required time; requiring the use of a script for Class Members to use when performing job duties; requiring Class Members to regularly attend meetings, requiring Class Members to attend pre-employment training; requiring Class Members to wear a uniform while working; setting disciplinary standards for Class Members, including daily and weekly customer quotas; requiring Class Members to use company-provided tablets while working; and requiring Class Members to inform their supervisors of how many customers they have successfully signed up each day;

b. Class Members had no opportunity for profit or loss based on their managerial skill, as working for 20/20 and Individual Defendants required little or no managerial skill whatsoever;

c. Class Members' work for 20/20 and Individual Defendants was "piece work" and not work that required initiative, judgment or foresight;

d. Class Members made no investment in equipment or materials required for their work for 20/20 and Individual Defendants; nor were they permitted to hire workers to assist them with their work;

e. Class Members' work for 20/20 and Individual Defendants required no special skill, only the willingness to approach potential subscribers;

f. Class Members' work for 20/20 and Individual Defendants was for an unspecified period of time, rather than for a contractually established period of time;

g. The services rendered by Class Members for 20/20 and Individual Defendants was an integral part of 20/20's business, as 20/20 and

Individual Defendants relied on revenue generated by Class Members' marketing efforts to stay in business;

h. 20/20 and Individual Defendants had the power to determine Class Members' rates of pay; and

i. 20/20 and Individual Defendants were responsible for maintaining Class Members' employment-related records.

18. In October 2014, 20/20 and Individual Defendants jointly created ODM as a "spin off" company from 20/20. From this point forward, ODM, rather than 20/20, began directly contracting with Class Members as independent contractors to promote wireless service plans and cellular phones to low-income communities.

19. From October 2014 to the present, ODM and Individual Defendants who worked for ODM as President (Defendant Clark) and Vice President (Defendant Farris) had the following relationship with Class Members:

a. ODM and Individual Defendants retained the right to control the manner in which Class Members performed their marketing work, including retention of the right to hire and terminate Class Members; setting and monitoring performance goals for Class Members; setting hours and location of work for Class Members; requiring Class Members to send supervisors a picture of themselves at work each morning to prove they are working during the required time; requiring the use of a script for Class Members to use when performing job duties; requiring Class Members to regularly attend meetings, requiring Class Members to attend pre-employment training; requiring Class Members to wear a uniform while working; setting disciplinary standards for Class Members, including daily and weekly customer quotas; requiring Class Members to use company-provided tablets while working; requiring Class Members to

inform their supervisors of how many customers they have successfully signed up each day; requiting Class Members' supervisors to participate in weekly phone calls with 20/20

b. Class Members had no opportunity for profit or loss based on their managerial skill, as working for ODM and Individual Defendants required little to no managerial skill whatsoever;

c. Class Members' work for ODM and Individual Defendants was "piece work" and not work that required initiative, judgment or foresight;

d. Class Members made no investment in equipment or materials required for their work for ODM and Individual Defendants; nor were they permitted to hire workers to assist them with their work;

e. Class Members' work for ODM and Individual Defendants required no special skill, only the willingness to approach potential subscribers;

f. Class Members' work for ODM and Individual Defendants was for an unspecified period of time, rather than for a contractually established period of time;

g. The services rendered by Class Members for ODM and Individual Defendants was an integral part of ODM's business, as ODM and Individual Defendants relied on revenue generated by Class Members' marketing efforts to stay in business;

h. 20/20 and Individual Defendants had the power to determine Class Members' rates of pay; and

i. 20/20 and Individual Defendants were responsible for maintaining Class Members' employment-related records.

20. Further, during the time period from October 2014 to the present, 20/20 is liable as a joint employer of Class Members, along with ODM and Individual Defendants, for reasons including, but not necessarily limited to, the following:

a. Class Members have acted in the interest of 20/20 in performing their marketing work, as 20/20 has financially benefited from Class Members' work. 20/20 enters into contracts with clients such as Sprint United Management, Inc. ("Sprint") in need of marketing for the Lifeline Assistance Program. Clients pay 20/20 for the marketing services performed by Class Members. 20/20 provides a portion of this payment to ODM, which then passes a set fee per customer sign-up to Class Members;

b. 20/20, and Individual Defendants acting as its agents, have had the right to hire, fire, and otherwise modify the employment conditions of Class Members, directly or indirectly. Specifically, 20/20 interviews Class Members, and determines whether they will be hired to work for ODM. 20/20 issues badges to Class Members required for their work. 20/20 is also in charge of deactivating Class Members who are terminated, so that they no longer have access to the client database;

c. 20/20, and Individual Defendants acting as its agents, have retained the right to supervise and control Class Members' work schedules and conditions of employment. Specifically, Individual Defendant Jerrimy Farris, while working for both 20/20 and ODM, used a program called Solix to track what time each Class Member started and stopped work each day, and when Class Members signed up customers. Class Members' supervisors have been required to participate in weekly meetings with 20/20, during which they discussed the weekly number of

sign-ups achieved by Class Members, the locations where Class Members should work, the standard operating procedures for Class Members, and new ODM agent hires. 20/20 compiles and disseminates to Class Members' supervisors daily data and customer sign-up reports which contained data for Class Members throughout the country;

d. Class Members' work is an integrated part of 20/20's product, namely providing cellular phones and plans to low income individuals, as 20/20 revenue is derived in substantial part (or completely) from Class Members' work;

e. 20/20, and Individual Defendants acting as agents, have retained the right to determine Class Members' rate of pay;

f. Once ODM was created, there was no change in the work responsibilities or payment method of those Class Members who transitioned from working for 20/20 directly to ODM directly;

g. 20/20 provided Class Members with tablets necessary to perform their work and provided Class Members with technology support;

h. 20/20, with Individual Defendants acting as its agents, has dictated to ODM the policies and procedures applicable to Class Members;

i. Class Members have not been not permitted to work for other companies providing the same products and services; and

j. If 20/20 were to go out of business, Class Members working directly for ODM would no longer have jobs.

21. Additionally, 20/20 is liable as ODM's alter ego during this time period, as Plaintiffs are informed and believe that 20/20 and ODM have the same officers and directors (including but not necessarily limited to Individual Defendants); employees of 20/20 provide support to ODM; given that Individual Defendants left 20/20 to form ODM, and immediately

began to work "with" 20/20, ODM is simply a conduit for 20/20; and ODM is inadequately capitalized.

22. At all relevant times, Class Members have been paid only a set fee between $4 and $10 for each qualified customer they sign up for clients' cell phone and wireless service plans.

23. As a result of the compensation policies in place at all relevant times, Class Members have routinely earned an hourly rate that is less than the federal minimum wage and California minimum wage.

24. At all relevant times, Class Members have typically been required to work about 60-72 hours per week, but have not been paid time-and-a-half for hours worked over 40 in a single week or eight in one day.

**COUNT I**

**FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF FLSA**

**(Collective Action on Behalf of FLSA Class Members)**

25. Plaintiffs incorporate all preceding allegations as if fully stated herein.

26. During many weeks, FLSA Class Members have not been paid the federal minimum wage for all hours worked. Defendants' knowing and willful failure to pay FLSA Class Members minimum wage violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

**COUNT II**

**FAILURE TO PAY OVERTIME IN VIOLATION OF FLSA**

**(Collective Action on Behalf of FLSA Class Members)**

27. Plaintiffs incorporate all preceding allegations as if fully stated herein.

28. FLSA Class Members have worked over 40 hours on a regular basis in order to meet Defendants' requirement that they sign up a certain number of customers each day. FLSA Class Members have not been compensated time-and-a-half for those hours worked over 40 in one week. Defendants' knowing and willful failure to pay FLSA Class Members overtime

compensation to which they are entitled violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

//

**COLLECTIVE ACTION ALLEGATIONS**

29. Counts I and II are brought by Plaintiffs pursuant to 29 U.S.C. § 216(b) on behalf of a class of similarly situated individuals, i.e. "all individuals who worked as independent contractors for 20/20 Communications, Inc., and/or Open Door Marketing, LLC, marketing free cell phones and wireless service plans to potential consumers face-to-face in California and Nevada since September 24, 2013, excluding individuals who worked in Nevada and signed arbitration agreements, who may choose to opt-in to this action pursuant to 29 U.S.C. § 216(b)" ("FLSA Class Members"). Class Members may choose to "opt-in" to this case, pursuant to 29 U.S.C. § 216(b).

**COUNT III**

**FAILURE TO PAY MINIMUM WAGE AND OVERTIME IN VIOLATION OF CALIFORNIA LABOR CODE**

**(Rule 23 Class Action on Behalf of California Class Members)**

30. Plaintiffs incorporate all preceding allegations as if fully stated herein.

31. California Class Members have worked over 40 hours in one week or over eight hours in one day on a regular basis in order to meet Defendants' requirement that they sign up a certain number of customers each day.

32. During many weeks, California Class Members have not been paid the California state minimum wage for all hours worked, or overtime pay for hours worked over 40 in one week or eight in one day.

**COUNT IV**

**FAILURE TO PROVIDE WORKERS WITH ITEMIZED WAGE STATEMENTS IN VIOLATION OF CALIFORNIA LABOR CODE**

**(Rule 23 Class Action on Behalf of California Class Members)**

33. Plaintiffs incorporate all preceding allegations as if fully stated herein.

34. Defendants have failed to provide California Class Members with properly itemized wage statements that accurately reflect the information required by Cal. Lab. Code § 226. For example, California Class Members have not been provided with statements reflecting their hours worked or rates of pay.

35. California Class Members have suffered injury as a result of the deficient wage statements because they have been unable to determine whether they have been accurately paid.

36. Defendants' failure to provide properly itemized wage statements has been a knowing and intentional failure, as they have intended to provide inaccurate wage statements, and the failure was not a simple clerical error.

**COUNT V**

**FAILURE TO REIMBURSE WORKERS FOR EXPENSES NECESSARY TO PERFORM THEIR JOBS IN VIOLATION OF CALIFORNIA LABOR CODE**

**(Rule 23 Class Action on Behalf of California Class Members)**

37. Plaintiffs incorporate all preceding allegations as if fully stated herein.

38. Defendants charge California Class Members $10 per week for equipment required to perform their jobs, and California Class Members have not been reimbursed for such charges, in violation of Cal. Labor Code § 2802.

39. Such costs are necessary because they are a condition of California Class Members' jobs with Defendants.

**COUNT VI**

**WAITING TIME PENALTIES**

**(Rule 23 Class Action on Behalf of California Class Members)**

40. Plaintiffs incorporate all preceding allegations as if fully stated herein.

41. Defendants willfully failed to pay all wages due at the time of separation, in violation of Cal. Labor Code § 203.

**COUNT VII**

**UNLAWFUL BUSINESS PRACTICES**

**(Rule 23 Class Action on Behalf of California Class Members)**

42. Plaintiffs incorporate all preceding allegations as if fully stated herein.

43. Defendants' violations of the above cited Labor Code provisions constitute unlawful business practices prohibited by California Business & Professions Code § 17200, *et seq*. and are independently actionable under California Business & Professions Code § 17200, *et seq*.

**RULE 23 CLASS ACTION ALLEGATIONS**

44. Counts III, IV, V, and VI are brought by Plaintiff Jennings as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf California Class Members, who are defined as "all individuals who worked as independent contractors for 20/20 Communications, Inc., and/or Open Door Marketing, LLC ("Open Door"), marketing free cell phones and wireless service plans to potential consumers face-to-face in California from September 2012 to the present, who did not sign arbitration agreements with 20/20."

45. California Class Members' identities are readily ascertainable, because their identities, including names and addresses, are determinable from Defendants' records.

46. Joinder of all California Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. There are more than 40 California Class Members.

47. Plaintiff Jennings' claims are typical of those claims which could be alleged by California Class Members, and the relief she seeks is typical of the relief which would be sought by each California Class Member in separate actions. Plaintiff Jennings and all California Class Members have been subject to the same corporate practices of Defendants, as alleged herein, including misclassification of California Class Members as independent contractors and Defendants' failure to pay minimum wage or overtime, failure to provide accurate wage statements, and failure to reimburse for necessary work related expenses.

48. California Class Members sustained similar losses, injuries, damages, and/or penalties resulting from Defendants' misclassification, and attendant failure to pay minimum wage or overtime, failure to provide accurate wage statements, and failure to reimburse for necessary work related expenses. California Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all California Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the California Class Members.

49. Plaintiff Jennings is able to fairly and adequately protect the interests of the California Class Members and have no interests antagonistic to California Class Members. California Class Members are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

50. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants, and are often hesitant to assert their rights out of fear of direct or indirect retaliation. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

51. Common questions of law and fact exist as to the California Rule 23 class members that predominate over any questions only affecting California Plaintiffs and the California Rule 23 class members individually. These questions include whether Defendants misclassified California Class Members class members as independent contractors, and whether Defendants policies or practices of failing to pay minimum wage and overtime pay, failing to provide accurate wage statements, and failing to reimburse for necessary work related expenses violate California law.

**COUNT VIII**

**PENALTIES PURSUANT TO THE PRIVATE ATTORNEYS GENERAL ACT (2004)**

**(REPRESENTATIVE ACTION)**

52. Plaintiff Jennings is an aggrieved employee as defined by Cal. Labor Code § 2699(c) because she was employed by Defendants during the applicable statutory period and suffered injury as a result of the Labor Code violations described herein. Accordingly, she seeks to recover on behalf of herself and all other aggrieved employees of Defendants, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

53. Plaintiff Jennings alleges that Defendants violated the California Labor code by (1) failing to pay their workers minimum wage or overtime pay for hours worked over 40 in violation of Cal. Lab. Code §§ 1194 and 1197; (2) failing to reimburse their workers for all reasonably necessary expenditures incurred in the discharge of their duties in violation of Cal. Lab Code § 2802; and (3) failing to provide itemized wage statements in violation of Cal. Lab Code § 226(a). Plaintiff Jennings is entitled to penalties for Defendants' violations of these provisions as set forth by Cal. Lab. Code § 2699(f).

54. Plaintiff Jennings has complied with the notice requirement of Cal Labor Code § 2699.3 and mailed a written notice to the California Labor and Workforce Development Agency (LWDA) and Defendants setting forth violations of various provisions of the California Labor Code via certified mail, return receipt requested.

55. More than thirty-three days have elapsed since the LWDA was notified of the Labor Code violations asserted in this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations.

**JURY DEMAND**

Plaintiffs request a trial by jury on all of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court enter the following relief:

1. Permission for Plaintiffs to notify fellow workers of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);
2. Restitution for the federal minimum wage;
3. Restitution for the federal overtime;
4. Permission to pursue their California claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;
5. Restitution for the California minimum wage;
6. Restitution for the California overtime;
7. Permission to pursue their PAGA claims as a representative action;
8. Civil penalties for violations of the California Labor Code;
9. Compensatory damages, including all expenses and wages owed;
10. Statutory penalties;
11. Liquidated damages;
12. Attorneys' fees and costs;
13. Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,
SHIKWANA JENNINGS and LISA DRAKE, individually and on behalf of all others similarly situated,

By their attorneys,

_/s/ Harold Lichten_______
Harold Lichten, *pro hac vice*
Jill Kahn, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

MATTHEW D. CARLSON (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by electronic filing on June 26, 2017, on all counsel of record.

_ /s/ Harold Lichten_______________
Harold Lichten, Esq.