UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARLOS CONDE, et al.,

             Plaintiffs,

     v.

OPEN DOOR MARKETING, LLC, et al.,

             Defendants.

Case No.  15-cv-04080-KAW

**ORDER STAYING MOTION TO COMPEL; GRANTING MOTION TO JOIN**

Re: Dkt. Nos. 216, 227

Plaintiffs Shikwana Jennings and Lisa Drake filed this putative class and collective action against Defendants 2020 Communications, Inc. ("2020"), Open Door Marketing, LLC ("Open Door"), Larry Clark, and Jerrimy Farris, alleging violations of the Fair Labor Standards Act ("FLSA") and various California labor laws.  (Fourth Amended Compl. ("FAC") ¶¶ 1-2, Dkt. No. 195.)  Pending before the Court are the following motions: (1) Defendant 20/20's motion to compel arbitration of opt-in Plaintiffs Nickey Huntley, Karrington Moody, Iris Sims, Makeda Sweeney, and Adrianna Trujillo; and (2) Defendants Open Door's, Clark's, and Farris's motion for joinder to Defendant 2020's motion to compel arbitration.  (2020 Mot. to Compel, Dkt. No. 216; Open Door Mot. for Joinder, Dkt. No. 227.)

Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel at the November 2, 2017 hearing, the Court STAYS Defendant 2020's motion to compel arbitration pending the Supreme Court's decision in *Ernst & Young LLP v. Morris*, Dkt. No. 16-300, and GRANTS the motion for joinder.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs bring the present action on behalf of individuals who worked for Defendants "to

promote free cell phones and wireless service plans for low-income individuals who meet the plans' requirements." (FAC ¶ 1.) Plaintiffs allege that they were misclassified as independent contractors, resulting in Defendants failing to pay them minimum wage, overtime, expenses, and all wages due at the time of termination, as well as failing to provide itemized wage statements. (FAC ¶ 2.)

Until October 2014, Defendant 2020 contracted directly with individuals to promote wireless service plans and cellular phones as "Sales Representatives." (*See* FAC ¶ 17; Burks Decl. ¶ 2, Dkt. No. 143-7.) To become a Sales Representative, individuals were required to execute a Mutual Arbitration Agreement ("2020 MAA"). (2020 Mot. to Compel at 3.) The 2020 MAA required that all disputes and claims between Sales Representatives and Defendant 2020 -- as well as Defendant 2020's subsidiaries, affiliates, directors, employees, or agents -- be arbitrated. (*See* Warren Decl., Exh. C ¶ 1, Dkt. No. 216-3.)

In October 2014, Defendant 2020 and the individual Defendants allegedly "jointly created [Open Door] as a 'spin off' company from 20/20." (FAC ¶ 18.) From that point on, Sales Representatives would contract directly with Defendant Open Door rather than Defendant 2020. Plaintiff alleges that Defendants were engaged in a joint employer relationship during this time. (FAC ¶ 20.) In January 2016, Defendant Open Door began using an independent contractor agreement that includes a mandatory arbitration provision.

### B. Procedural Background

Plaintiffs filed this action on September 8, 2015. (Compl., Dkt. No. 1.) Following the commencement of this action, the parties filed a series of motions. On October 23, 2015, Plaintiffs filed a motion for notice to be issued to similarly situated employees pursuant to 29 U.S.C. § 216(b). (Dkt. No. 21.) On December 7, 2015, Defendant Open Door filed a motion to compel arbitration and dismiss, or alternatively, stay claims; a motion to dismiss based on forum non conveniens and Rule 12(b)(3); and a motion to dismiss pursuant to Rule 12(b)(6), or alternatively, for a more definite statement pursuant to Rule 12(e). (Dkt. Nos. 49, 50, 51.) Defendant 2020 also filed a motion to dismiss Plaintiffs' complaint, or alternatively, for a more definite statement, as well as a motion to compel arbitration and dismiss, or alternatively, stay

United States District Court
Northern District of California

claims.  (Dkt. Nos. 53, 54.)

On April 12, 2016, the Court issued an order on the parties' motions.  (Ord., Dkt. No. 92.)
First, the Court denied the motion to dismiss based on forum non conveniens, finding that the
forum selection clause did not apply to the claims asserted in the action.  (*Id.* at 6.)  Second, the
Court granted Defendant 2020's unopposed motion to compel arbitration of former Plaintiff Carlos
Conde.  (*Id.* at 7.)  Third, the Court granted Defendant 2020's motion to dismiss on the ground that
Plaintiffs failed to "identify the particular conduct attributable for each defendant," as Plaintiffs
instead used the term "Defendants" throughout the complaint, which "failed to give each
defendant fair notice of the claims asserted against them and the grounds upon which those claims
rest."  (*Id.* at 9-10.)  Fourth, the Court granted Defendant Open Door's motion to dismiss as to
claims asserted against Defendant Open Door prior to September 2014, and as to claims asserted
against Defendants Farris and Clark specifically due to the lack of "any allegations describing
what conduct Farris and Clark engaged in that would expose them to liability for the wage and
hour violations Plaintiffs allege."  (*Id.* at 10-11.)  Finally, the Court held in abeyance Plaintiffs'
motion for notice to be issued to similarly situated employees pending the filing of the third
amended complaint and the parties' meet and confer on the scope of the class.[1]  (*Id.* at 15.)

On June 21, 2016, the parties stipulated to the issuance of notice to all individuals who
worked for Defendant Open Door "as independent contractors marketing free cell phones and
wireless service plans to potential consumers face-to-face in Nevada and California from October
2014 to the present" who had not entered into an arbitration agreement with either Open Door or
2020.  (Dkt. No. 104 at 2.)  Plaintiffs' counsel would issue notice to these individuals, after which
class members would have 60 days to opt into the collective action.  (*Id.* at 2-3.)  The parties
would then participate in a full-day private mediation.  (*Id.* at 3.)  In the interim, the case would be
stayed in its entirety, and Plaintiffs' motion for notice would remain held in abeyance.  (*Id.*)  On
June 28, 2016, the Court granted the stipulation and stayed the case.  (Dkt. No. 107.)

On November 29, 2016, former counsel for Defendants Open Door, Clark, and Farris

---

[1] Plaintiffs' motion for notice to be issued was subsequently terminated as moot, in light of
Plaintiffs filing a subsequent motion to expand the certified collective action.  (Dkt. No. 165.)

3

moved to withdraw as counsel.  (Dkt. No. 124.)  Through this motion, the Court was notified, for the first time, that the mediation had taken place on November 10, 2016, but was unsuccessful, and that the parties had agreed to lift the stay on November 17, 2016.  (Dkt. No. 124-1 ¶¶ 3-4.)  The Court ordered the parties to submit a joint status report to explain the status of the case and any pending motions before the Court.  After the parties filed their joint status report, the Court lifted the stay and set a case management conference.  (Dkt. No. 127.)  On January 10, 2017, the Court granted the motion to withdraw as counsel.  (Dkt. No. 128.)  Defendants Open Door, Clark, and Farris have since obtained counsel.  (*See* Dkt. No. 225.)

On February 24, 2017, Plaintiffs filed their motion to expand the scope of the collective action to include individuals who signed arbitration agreements with Defendants 2020 and Open Door.  (Dkt. No. 139.)  Defendant opposed the motion, arguing amongst other things that individuals who signed arbitration agreements were not similarly situated.  (Dkt. No. 152 at 13.)  On March 1, 2017, Defendant 2020 filed its motion to deny class certification as to individuals who signed arbitration agreements with Defendants.  (Dkt. No. 143.)  Defendants also filed a motion for judgment on the pleadings as to Plaintiff Jennings's Private Attorneys General Act ("PAGA") claim.  (Dkt. No. 144.)

On April 27, 2017, the Court issued an order disposing of the parties' motions.  First, the Court granted in part and denied in part Defendant 2020's motion to deny class certification, finding that the named Plaintiffs lacked typicality to represent individuals who had signed arbitration agreements with Defendant 2020, when Plaintiffs themselves had not.  (Dkt. No. 178 at 12.)  The Court denied Defendant 2020's motion to deny class certification as to putative class members who signed arbitration agreements with Defendant Open Door; to the extent Defendant 2020 argued that it could rely on this arbitration agreement as a third-party beneficiary and/or on a theory of equitable estoppel, the Court found that Defendant 2020 had "fail[ed] to point to any legal authority or factual evidence in support of this proposition." (*Id.* at 15.)  Second, the Court granted in part and denied in part Plaintiffs' motion to expand the scope of the collective action, finding that Plaintiffs satisfied the limited step one inquiry for conditional certification, but limiting the scope to individuals in California in order to ensure manageability.  (*Id.* at 25.)  The

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    Court, however, agreed with Defendants that any notice would need to "reflect the possibility that

2    an opt-in plaintiff will be compelled to arbitrate his or her claims."  Finally, the Court denied the

3    motion for judgment on the pleadings, finding that the PAGA notice letter was adequate.  (*Id.* at

4    28.)

5            On August 24, 2017, Defendants filed the instant motion to compel arbitration by opt-in

6    Plaintiffs Huntley, Moody, Sims, Sweeney, and Trujillo.  Each of the opt-in Plaintiffs executed

7    consent forms after the parties stipulated to the issuance of notice to individuals who worked for

8    Defendant Open Door but had not entered into arbitration agreements with either Defendant 2020

9    or Defendant Open Door.  (2020 Mot. to Compel at 1.)  The parties do not appear to dispute that

10   the five opt-in Plaintiffs at issue had in fact executed the 2020 MAA; thus, none of these

11   individuals should have received the stipulated to notice.  (*Id.*; Plfs.' Opp'n at 1-2, Dkt. No. 219.)

12   On July 17, 2017, Defendant 2020 requested that the five opt-in Plaintiffs arbitrate their claims,

13   attaching copies of the signed MAAs.  (Decker Decl. ¶ 3, Dkt. No. 216-1; Plfs.' Opp'n at 2.)

14   Plaintiffs' counsel indicated that they would not agree to arbitrate.  (Decker Decl. ¶ 4.)  This

15   motion followed.

16           On September 7, 2017, Plaintiffs filed their opposition to the instant motion.  On

17   September 14, 2017, Defendant 2020 filed their reply brief.  (2020 Reply, Dkt. No. 221.)  On

18   September 28, 2017, Defendants Open Door, Farris, and Clark filed a motion for joinder to

19   Defendant 2020's motion to compel arbitration, requesting that "any relief ordered by the Court to

20   Defendant 20/20 pursuant to Defendant 20/20's Motion to Compel and Dismiss . . . be ordered in

21   favor of the ODM Defendants as well."  (ODM Mot. for Joinder, Dkt. No. 227.)  No opposition or

22   reply was filed with respect to the motion for joinder.

23                          **II.    LEGAL STANDARD**

24           Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements

25   "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity

26   for the revocation of a contract."  9 U.S.C. § 2.  "Once the Court has determined that an arbitration

27   agreement relates to a transaction involving interstate commerce, thereby falling under the FAA,

28   the court's only role is to determine whether a valid arbitration agreement exists and whether the

scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-281-JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

### III.    DISCUSSION

#### A.    Request to Join

As an initial matter, Defendants Open Door, Farris, and Clark have requested to join in Defendant 2020's motion to compel arbitration. (ODM Mot. for Joinder.) Plaintiffs did not file an opposition. To the extent Defendants Open Door, Farris, and Clark are seeking to join the motion, Defendants' request is GRANTED as unopposed. This does not, however, mean that Defendants Open Door, Farris, and Clark are necessarily entitled to the same relief as Defendant 2020; instead, that issue requires an analysis of whether the 2020 MAA can be used to compel arbitration of the claims against Defendants Open Door, Farris, and Clark, which is a merits-based issue discussed below.[2]

#### B.    Motion to Compel Arbitration

In opposing Defendant 2020's motion to compel arbitration, Plaintiffs raise three primary arguments. First, Plaintiffs argue that Defendant 2020 waived its right to compel the five opt-in Plaintiffs into arbitration. (Plfs.' Opp'n at 1-2.) Second, Plaintiffs contend that the class action waiver violates the National Labor Relations Act ("NLRA"). (*Id.* at 2-3.) Third, Plaintiffs assert that the class action waiver is unenforceable under California law, specifically *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007). (*Id.* at 3.) Finally, Plaintiffs argue that the 2020 MAA cannot be used to compel arbitration of claims against Defendants Open Door, Farris, and Clark, as they are nonsignatories to the agreement. (*Id.*)

##### i.    Waiver

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*,

---

[2] At the hearing, Defendant 2020 suggested that the applicability of *Garcia v. Pexco, LLC* was moot if the Court granted the motion to join. Again, the Court disagrees; simply because Defendants Open Door, Farris, and Clark join in the motion does not mean they are entitled to the same relief that Defendant 2020 is. Thus, the issue of whether claims against Defendants Open Door, Farris, and Clark must be arbitrated under the 2020 MAA must still be decided.

United States District Court
Northern District of California

United States District Court
Northern District of California

829 F.3d 1118, 1124 (9th Cir. 2016).  A determination of waiver of a right to arbitration "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id.* (internal quotation omitted).  Furthermore, "[b]ecause waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation omitted).  The party seeking waiver must therefore demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (internal quotation omitted).  The Court concludes that Plaintiffs have failed to demonstrate any of these three requirements.

a.  Knowledge of an Existing Right to Compel Arbitration

Plaintiffs argue that Defendant 2020 had knowledge of its right to compel arbitration because Defendant 2020 has repeatedly asserted its right to compel arbitration throughout this litigation.  (Plfs.' Opp'n at 5.)  With respect to the five opt-in Plaintiffs at issue, Plaintiffs contend that Defendant 2020 "should have been vigilant in checking that each opt-in had not in fact signed an agreement to arbitrate."  (*Id.* at 6.)  Plaintiffs suggest that simply examining the opt-in form would have put Defendant 2020 on notice of a right to compel arbitration, as the opt-in forms state:

> I work/worked for Open Door Marketing, LLC, in Nevada or California, marketing free cell phones and wireless service plants to potential customers face-to-face from on or about _____ (month, year) to on or about _____ (month, year), and have been classified as an independent contractor.

(*E.g.*, Dkt. No. 108-1 at 15.)  If an individual listed a date prior to the formation of Open Door, then that individual must have worked for Defendant 2020 and would be subject to an arbitration agreement.  (Plfs.' Opp'n at 6.)  Thus, Plaintiffs argue that even if the Court was to find that Defendant 2020 lacked actual knowledge of its right to arbitrate the claims of the five opt-in Plaintiffs, "it most certainly *should have* known this information."  (*Id.* at 6 n.4.)

Defendant 2020 responds that it had no reason to believe that individuals who had signed arbitration agreements would be opting in, given that the parties had stipulated to sending notice only to individuals who had worked for Defendant Open Door as independent contractors, and

"who have not entered into an arbitration agreement with either Open Door . . . or 20/20 Communications, Inc."  (Dkt. No. 104 at 2.)  Defendant 2020 asserts that it could "reasonably rel[y] on this stipulation, and assume[] that those joining the action would be those who had received notice, and therefore were not subject to arbitration."[3]  (2020 Reply at 3.)

The Court agrees that Defendant 2020 could reasonably rely on the stipulation, which limited notice of the collective action to individuals who had not signed arbitration agreements. Given this agreed to limitation, Defendant 2020 had no reason to think that the opt-ins would include individuals who had signed arbitration agreements, or to check for any such individuals. Under these unique circumstances, Defendant 2020 should not be required, as Plaintiffs propose, to examine every opt in form for individuals who may have signed arbitration agreements, when none of those individuals should have had knowledge of the suit.

Plaintiffs' cited cases are not to the contrary.  In *Equal Employment Opportunity Commission v. Fry's Electronics, Inc.*, the district court found that the defendant knew or should have known that it had a right to compel arbitration because it "ha[d] a policy of requiring all employees to sign an agreement to arbitrate disputes as a condition of employment."  No. C10-1562RSL, 2011 WL 666328, at *3 (W.D. Wash. Feb. 14, 2011).  In short, every employee was automatically subject to an arbitration agreement; there was no need to investigate whether an employee had or had not signed an arbitration agreement.  Here, however, Plaintiffs would require that Defendant 2020 conduct that precise investigation, as the instant case involves individuals

---

[3] In their opposition, Plaintiffs state that "there was always good reason for 20/20 to suspect that there would be overlap between the workers who received the first notice that was issued, and those who were not on this notice list because they had signed arbitration agreements with 20/20." (Plfs.' Opp'n at 6.)  Plaintiffs base this argument on the fact that many individuals started out working directly for Defendant 2020, before working directly for Defendant Open Door after it was created.  (*Id.* at 5-6.)

Plaintiffs do not explain why this would create overlap between individuals who received the stipulated notice and individuals who were not on the notice list; the stipulated notice was not limited to individuals who had not signed arbitration agreements with Defendant Open Door, but to "individuals who have not entered into an arbitration agreement with *either* Open Door Marketing, LLC or 20/20 Communications, Inc."  (Dkt. No. 104 at 2.)  Thus, the notice list would not include any individuals who signed arbitration agreements with 2020, even if they first worked for Defendant 2020 before working for Defendant Open Door.  At the hearing, Plaintiff acknowledged that they were mistaken as to the scope of the parties' stipulation.

United States District Court
Northern District of California

who signed arbitration agreements, as well as individuals who did not.

Ambrosio v. Cogent Communications, Inc. is also distinguishable.  Case No. 14-cv-2182-RS, 2016 WL 4436091 (N.D. Cal. Aug. 5, 2016).  In *Ambrosio*, approximately half of the putative class was subject to an arbitration agreement, while the remainder was not.  *Id.* at *4 n.8.  Despite having stated in discovery that the named plaintiff had signed an arbitration agreement, the defendant did not inform the district court that it intended to compel arbitration until nineteen months after the defendant had answered the complaint.  *Id.* at *3, 5.  The district court ultimately found that the defendant had knowledge of its right to arbitration, as the defendant had raised the arbitration issue as an affirmative defense in its answer, and had moved to compel arbitration in a prior case.  *Id.* at *5.

*Ambrosio* is distinguishable because there, the defendants actually knew that one of the named plaintiffs had signed an arbitration agreement, and had reason to know that at least some of the putative class members had signed an arbitration agreement.  In this case, however, the pool of individuals who should have received notice of the case was limited only to individuals who did not sign arbitration agreements; this was therefore not a situation where Defendant 2020 knew or should have known that individuals opting into the lawsuit might have signed arbitration agreements.  Instead, Defendant 2020 could rationally rely on the parties' stipulation limiting who received notice to individuals who did not sign arbitration agreements, and had no reason to believe it necessary to investigate whether every opt-in plaintiff had not signed an arbitration agreement when no such individuals should have received notice of the suit in the first place. Under these unique circumstances, it is not reasonable to require that Defendant 2020 check every opt-in form to see if it involves an individual who should go to arbitration.[4]  Plaintiffs cite no authority to the contrary, and the Court therefore concludes that Defendant 2020 did not have knowledge of an existing right to compel arbitration as to the five opt-in Plaintiffs at issue.

> b.  Acts Inconsistent with the Existing Right

Even if Defendant 2020 had knowledge of its right to compel arbitration of the five opt-in

---

[4] A different conclusion might be warranted if notice was provided to both individuals who signed arbitration agreements and individuals who did not.  This, however, is not such a situation.

United States District Court
Northern District of California

Plaintiffs at issue, the Court finds that Defendant 2020 has not taken actions inconsistent with that right.  In general, "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."  *Martin*, 829 F.3d at 1125.  "A party's extended silence and delay in moving for arbitration[, however,] may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate."  *Id.* (internal quotation omitted).  Thus, "[t]his element [is] satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court."  *Id.*  Moreover, "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver.  *Id.*

Here, Plaintiffs argue that Defendant 2020 has acted inconsistently because following the close of the stipulated opt-in period, Defendant 2020 has filed affirmative motions to deny class certification and for judgment on the pleadings, and filed an answer to the Fourth Amended Complaint.  (Plfs.' Opp'n at 7.)  Plaintiffs also point to Defendant 2020's participation in discovery -- including entering into a protective order, serving discovery requests, and responding to Plaintiffs' discovery requests -- as well as Defendant 2020's participation in joint case management statements, discovery plans, and case management conferences.  (*Id.* at 8.)  Plaintiff does acknowledge, however, that Defendant 2020 "refrained from serving discovery requests on the five Opt-in Plaintiffs at issue here."  (*Id.* at 9.)

Defendant 2020 responds that, in general, these acts are not inconsistent because while the instant motion seeks to compel arbitration as to five individuals, the case will continue to move forward because the two named Plaintiffs and approximately 120 other opt-in Plaintiffs did not sign arbitration agreements.  Thus, "this action will proceed in court as to those non-signatories regardless of the treatment of the five Opt-in Plaintiffs, or any other future plaintiff who has executed the MAA."  (2020 Reply at 4.)  As to the specific points raised by Plaintiffs, Defendant 2020 contends that the answer raised arbitration as an affirmative defense, while the motion to deny class certification was premised on excluding individuals who signed arbitration agreements.  (*Id.* at 4-5.)  As for the motion for judgment on the pleadings, Defendant 2020 points out that this was directed solely at Plaintiff Jennings's PAGA claim, which is not subject to arbitration because

10

United States District Court
Northern District of California

1    Plaintiff Jennings did not sign an arbitration agreement.  (*Id.* at 5.)  Finally, as to discovery,

2    Defendant 2020 argues that it did not propound any discovery as to the five opt-in Plaintiffs at

3    issue in this motion, and declined to provide any information applicable solely to the claims of

4    individuals who signed arbitration agreements.  (*Id.* at 5-6.)

5            The Court finds that the actions taken by Defendant 2020 are not inconsistent with an

6    intent to arbitrate.  While Defendant 2020 has vigorously litigated this case, Defendant 2020

7    would be required to do so regardless of whether or not the five opt-in Plaintiffs who are the

8    subject of this motion were compelled to arbitration, as Defendant 2020 would still have to defend

9    a case against approximately 120 individuals who are not subject to arbitration agreements.  Thus,

10   to the extent that Defendant 2020 participated in discovery and case management, those actions

11   were necessitated by a suit that would have proceeded regardless of the outcome of a motion to

12   compel arbitration.  As to the motions brought by Defendant 2020, the motion to deny class

13   certification was premised not on the merits, but solely on whether the named Plaintiffs lacked

14   typicality to represent individuals who had signed arbitration agreements with Defendant 2020.

15   Notably, the Ninth Circuit has acknowledged that "seeking a decision on the merits of an issue

16   may satisfy" the inconsistency requirement, but that "filing a motion to dismiss that does not

17   address the merits of the case is not sufficient to constitute an inconsistent act."  *Martin*, 829 F.3d

18   at 1125.  While not a motion to dismiss, the motion to deny certification is likewise not premised

19   on the merits of the case, and is insufficient to constitute an act inconsistent with an intent to

20   arbitrate.  Finally, although Plaintiffs point to the motion for judgment on the pleadings as a

21   motion on the merits, as with the discovery and case management that has proceeded in this case,

22   that motion would have proceeded irrespective of the arbitration motion because Plaintiff Jennings

23   did not sign an arbitration agreement; thus, her PAGA claim could not have been compelled to

24   arbitration in the first place.

25           Each of the cases cited by Plaintiffs are distinguishable.  (Plfs.' Opp'n at 8; *id.* at 8 n.6.)

26   For example, in *Taveras v. XPO Last Mile, Inc.*, the district court found that the defendant had

27   waived its right to arbitrate where the defendant filed a third-party complaint asserting rights under

28   the very agreement that included an arbitration clause.  (Plfs.' Opp'n, Exh. A ("*Taveras* Hearing

Transcript") at 30:20-31:8.)  The defendant litigated two motions to dismiss the third-party complaint, and engaged in substantial discovery that required judicial intervention.  (*Taveras* Hearing Transcript at 34:1-15, 36:4-8.)  Likewise, in *Martin*, the defendants spent seventeen months litigating a case, including "filing a motion to dismiss on a key merits issue," and who had also indicated to the district court "that they were likely 'better off' in federal court."  829 F.3d at 1126.  Similarly, in *Ambrosio*, the defendant did not represent in any filing to the district court that it intended to compel arbitration until more than twenty months into the case.  2016 WL 4436091, at *5.  During this time, the defendant engaged in discovery that might not have been permitted in the arbitral forum, sought judgment on the pleadings, moved to dismiss on the grounds of collateral estoppel, opposed the plaintiffs' motions for class and collective action certification, moved for interlocutory appeal, sought permission to appeal the certification order, and moved to stay the case.  *Id.* at *6.  "Only after these efforts resolved in plaintiffs' favor did [the defendant] produce signed arbitration agreements, and represent to plaintiffs that it affirmatively would move to compel arbitration."  *Id.*  In short, in each of the cases cited by Plaintiffs, the defendants sought to adjudicate merits-based motions or otherwise engaged in significant litigation that would not have been necessary if the defendant had timely moved for arbitration.  *See also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988) (defendant actively litigated the case, including filing a motion to dismiss, all the way to the issuance of a pre-trial conference order in June, for a trial set for October); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. Appx. 663, 664 (9th Cir. 2014) (defendants waited eleven months before moving to compel arbitration, in the meantime conducting discovery and litigating a preliminary injunction and motion to dismiss); *Ford. v. Yasuda*, No. 5:13-cv-1961-PSG-DTB, 2015 WL 3650216, at *6 (C.D. Cal. Apr. 29, 2015) (defendants actively litigated case for seventeen months, including filing a motion to dismiss that "test[ed] their theories that Plaintiffs were not employees and that Yasuda was not individually liable"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067-68 (C.D. Cal. 2011) (defendants "pursued discovery that would have been impermissible in arbitration").

In contrast to each of these cases, the actions taken by Defendant 2020 -- including the motions filed and discovery sought -- would have occurred regardless of whether arbitration was

1    compelled or not, as there is a substantive, pending case with approximately 120 individuals who

2    are not subject to an arbitration agreement.  The Court therefore concludes that Defendant 2020

3    has not taken actions inconsistent with its right to compel arbitration.

c.   Prejudice to Plaintiffs

5    Finally, the Court concludes that Plaintiffs have failed to demonstrate prejudice resulting

6    from Defendant 2020's actions.  To demonstrate prejudice, "the plaintiffs must show that, as a

7    result of the defendants having delayed seeking arbitration, they have incurred costs that they

8    would not otherwise have incurred, that they would be forced to relitigate an issue on the merits

9    on which they have already prevailed in court, or that the defendants have received an advantage

10   from litigating in federal court that they would not have received in arbitration."  *Martin*, 829 F.3d

11   at 1126.

12   First, Plaintiffs appear to argue that they have expended time and money because of

13   Defendant 2020's delay.  (Plfs.' Opp'n at 9-10.)  The Court disagrees.  Plaintiffs fail to provide any

14   information regarding the time and they assert would not have been spent if Defendant

15   2020 had earlier moved to compel arbitration as to the five opt-in Plaintiffs at issue, particularly

16   where Plaintiffs admit that Defendant 2020 did not seek any discovery as to these five individuals.

17   The lack of specifics as to the resources Plaintiffs assert were wasted is significant, given that the

18   Ninth Circuit has made clear that "[a]lthough litigation conduct inconsistent with a right to

19   arbitrate most frequently causes prejudice to the opposing party, the link is *not automatic*."

20   *Martin*, 829 F.3d at 1126 (emphasis added).[5]

21   Plaintiffs' reliance on *Ambrosio* only highlights the lack of prejudice in the instant case.  In

22   *Ambrosio*, the defendant sought to arbitrate the claims of approximately 166 individuals out of the

23   283 total class members.  2016 WL 4436091, at *4 n.8.  The plaintiffs argued that if the defendant

24   had timely sought to compel arbitration of the named plaintiff and half the class, they would have

25   made different strategic decisions, including requesting an early settlement conference, not

26   _____

27   [5] At the hearing, Plaintiffs suggested that the opt-in Plaintiffs would be required to pay arbitration
     fees that they would not have to pay if their case was to proceed in court.  This argument,

28   however, goes to unconscionability -- which Plaintiffs did not argue in their opposition -- not to
     whether Plaintiffs suffered prejudice from any alleged delay in bringing the instant motion.

United States District Court
Northern District of California

1    pursuing class certification, and making different decisions with respect to conducting discovery

2    or filing motions. *Id.* at *7. The district court found that these different litigation tactics

3    contributed to prejudice. Further, the district court found that even though the costs and resources

4    spent on litigating the case would not completely go to waste because half the class remained,

5    there could be no question that some of those costs would not have arisen if the defendant had

6    timely sought to compel arbitration.

7        In contrast to *Ambrosio*, Plaintiffs identify no litigation decisions that would have been

8    different if they had known earlier that Defendant 2020 would seek to compel arbitration of the

9    five individuals at issue. More importantly, unlike in *Ambrosio*, Defendant 2020 seeks to compel

10   arbitration of only five out of approximately 120 opt-in Plaintiffs, or 4.2%. In *Carroll v. Wells*

11   *Fargo & Co.*, the district court rejected the plaintiffs' argument that they had expended

12   considerable money and effort litigating the case where the defendant sought to arbitrate the

13   claims of approximately 7.5-8.75% of the putative class. Case No. 15-cv-2321-EMC, 2017 WL

14   956629, at *6 (N.D. Cal. Mar. 13, 2017). The district court explained that the plaintiffs "would

15   likely have incurred much or most of the litigation expenses they did even if the arbitration issue

16   had been brought up earlier because even if a portion of the putative class were directed to

17   arbitration and excluded from the class, this class action case would still proceed largely intact."

18   *Id.* Such is the case here, particularly when Defendant 2020 has made no discovery requests of the

19   five opt-in Plaintiffs at issue. Thus, the Court rejects Plaintiffs' contention that they are prejudiced

20   by the amount of money and time spent litigating the case.

21       Second, Plaintiffs argue that Defendant 2020 would receive an advantage from relitigating

22   the opt-in Plaintiffs' cases in a new forum. (Plfs.' Opp'n at 10.) Plaintiffs admit that the Court has

23   *not* issued a decision on the merits in the case, but argue that the Court stated in its prior order that

24   "Plaintiffs' 'allegations suggest that there was a joint employer relationship,'" citing to both the

25   complaint and declarations submitted from named Plaintiffs and other opt-ins. (*Id.* (quoting Dkt.

26   No. 178 at 21.) The Court rejects this argument. As Plaintiffs acknowledge, this was not a ruling

27   on the merits, but an observation drawn from one party's evidence on whether the allegations of

28   joint employment were adequate to establish standing. (Dkt. No. 178 at 21.) It is neither

United States District Court
Northern District of California

dispositive nor binding, and is still subject to dispute.  In short, Plaintiffs are not prejudiced because whether in arbitration or in court, Plaintiffs would still have to litigate the issue of whether Defendants were legally joint employers.

Finally, Plaintiffs contend that Defendant 2020 can "proceed in arbitration with the benefit of the information that it has received from discovery and litigating this case[] against the Opt-in Plaintiffs' attorneys over the last year." (Plfs.' Opp'n at 11.)  Plaintiffs rely on *Ford*, where the district court found waiver in part because "compelling arbitration would require plaintiffs to relitigate matters decided by the district judge in ruling on the motions to dismiss."  2015 WL 3650216, at *8 (internal quotation and modification omitted).  Such is not the case here.  Plaintiffs do not identify any information received in discovery that Defendant 2020 would not have otherwise received, the cost of obtaining that information, or whether that information is significant or relevant to the action.  Moreover, again, there have been no decisions on the merits in this case, and no showing that Defendant 2020 is only seeking to escape an unfavorable ruling issued by the Court.  The Court concludes that Plaintiffs have failed to satisfy their "heavy burden of proof" to establish prejudice and, accordingly, waiver in this case.  *Martin*, 829 F.3d at 1124 (internal quotation omitted).

### ii. *Morris v. Ernst & Young* and the National Labor Relations Act

In the alternative, Plaintiffs argue that the motion to compel should be denied because the Ninth Circuit held that class action waivers in employment agreements are illegal under the NLRA in *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016).  (Plfs.' Opp'n at 11-12.)  *Morris* is currently on appeal before the Supreme Court, with oral arguments having taken place on October 2, 2017.  In the briefing, Defendant 2020 requested a stay while Plaintiffs sought an immediate decision; at the hearing, the parties' positions were reversed, with Defendant 2020 requesting an immediate decision and Plaintiff seeking a stay.  (*See* Plfs.' Opp'n at 12; 2020 Reply at 11 n.2.)  In light of the pending appeal, the Court finds it appropriate to STAY this question until after the Supreme Court issues a decision.[6]  (2020 Reply at 11 n.2.)

_____

[6] Plaintiffs suggest that if the Court is not inclined to decide the issue, it should stay the question until after the Ninth Circuit reached a decision in the pending *Uber* appeals.  (Plfs.' Opp'n at 20

United States District Court
Northern District of California

United States District Court
Northern District of California

### iii.   *Gentry v. Superior Court*

Plaintiffs next argue that the arbitration agreement is unenforceable per the California Supreme Court's decision in *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007).  (Plfs.' Opp'n at 20.)  Defendant 2020 responds that *Gentry* is no longer good law.  (2020 Reply at 12.)

In *Gentry*, the California Supreme Court found that "under some circumstances[, a class arbitration waiver] would lead to a de facto waiver and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws."  42 Cal. 4th at 457.  The California Supreme Court identified four factors that a court was to consider in determining whether a class arbitration waiver is valid: (1) the modest size of the potential individual recovery; (2) the potential for retaliation against class members; (3) the fact that absent class members may be ill-informed of their rights; and (4) other real world obstacles to vindicating class members' rights of overtime pay in individual arbitrations.  *Id.* at 463.

The Court finds that *Gentry* is no longer good law with respect to contracts that are subject to the FAA.  Plaintiffs argue that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), which found state rules prohibiting class action waivers in arbitration agreements were preempted by the FAA, do not apply to the employment context.  (Plfs.' Opp'n at 20.)  Thus, Plaintiffs assert that these cases, which were both in the consumer context, would not invalidate *Gentry's* rule prohibiting class waivers in employment cases.  (*Id.*)  In support, Plaintiffs cite to *Plows* and *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489 (2011).

In *Plows*, the district court relied on *Brown* to determine that *Gentry* was still good law following *Concepcion*.  812 F. Supp. 2d at 1069.  *Brown*, however, did not decide the issue of "whether, under [*Concepcion*], the rule in *Gentry* concerning the invalidity of class action waivers in employee-employer contract arbitration clauses is preempted by the FAA."  197 Cal. App. 4th at 498.  Instead, the Court of Appeal found that the plaintiff had failed to make a factual showing

n.20.)  On September 22, 2017, the Ninth Circuit stayed the *Uber* appeals pending the Supreme Court's resolution of the *Morris* appeal.  (Case No. 14-16078, Dkt. No. 144 at 3.)  The Court likewise follows suit.

United States District Court
Northern District of California

1  under *Gentry's* four-factor test, and reversed the trial court's ruling invalidating the class action

2  waiver.  *Id.* at 497.  Notably, both *Plows* and *Brown* predated the California Supreme Court's

3  decision in *Iskanian v. CLS Transportation Los Angeles, LLC*, where the California Supreme

4  Court squarely addressed "the viability of *Gentry* in light of *Concepcion*."  59 Cal. 4th 348, 362

5  (2014).  The California Supreme Court ultimately concluded that *Gentry* did not survive

6  *Concepcion*, explaining that "*Concepcion* held that the FAA does prevent states from mandating

7  or promoting procedures incompatible with arbitration.  The *Gentry* rule runs afoul of this latter

8  principle.  We thus conclude in light of *Concepcion* that the FAA preempts the *Gentry* rule."  59

9  Cal. 4th at 366.  This Court likewise finds that *Gentry* is no longer good law.[7]  *See Securitas Sec.*

10  *Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109, 1118 (2015) (citing *Iskanian* in

11  explaining that "[e]ven where a class arbitration would be a more effective or practical means of

12  vindicating the employee's rights, a state law rule against class action waivers would still be

13  preempted because states cannot require a procedure that interferes with fundamental attributes of

14  arbitration even if it desirable for unrelated reasons") (internal quotation omitted); *Franco v.*

15  *Arakelian Enters., Inc.*, 234 Cal. App. 4th 947, 956 (2015) ("Under *Concepcion* and *Iskanian*, the

16  public policy behind the vindication of employees' statutory protections must yield to the policy

17  protecting agreements to arbitrate disputes involving interstate commerce").

18       Even if *Gentry* was good law, the Court finds that Plaintiffs have not satisfied its

19  requirements by making a factual showing of the four *Gentry* factors.  In *Brown*, the Court of

20  Appeal rejected the plaintiff's assertion of *Gentry* when the plaintiff failed to provide any evidence

21  that the class action waiver was invalid.  197 Cal. App. 4th at 489.  Likewise, Plaintiffs here

22  provide no evidence in support of their *Gentry* argument and, instead, make conclusory or

23  speculative statements.  For example, as to the first factor of the size of Plaintiffs' potential

24  recovery, Plaintiffs provide no information or estimate as to the amount of damages.  Instead,

25  Plaintiffs contend that the positions "typically" have high turnover rates and that Plaintiffs were

26

27  _____

   [7] At the hearing, Plaintiffs offered no support for why *Gentry* should be considered good law

28  following *Iskanian*, only arguing that because the Ninth Circuit had yet to decide the issue, they
   wished to preserve the argument.

United States District Court
Northern District of California

making minimum wage claims, such that "[t]hese factors are *likely* to combine for a relatively small number in damages for each putative class member." (Plfs.' Opp'n at 22.) Notably, in *O'Donnell v. TD Ameritrade, Inc.*, to which Plaintiffs cite, the plaintiffs provided an estimate of the potential recovery, excluding penalties, interest, and attorney's fees. No. 07cv0123 BTM(JMA), 2008 WL 8976220, at *3 (S.D. Cal. June 17, 2008); *see also Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 846 (2015) (noting that the plaintiff's attorney submitted evidence estimating the plaintiff's likely recovery at $11,000). By contrast, Plaintiffs provide no such estimate, and only make general statements that these types of cases typically and likely result in small damages. Similarly, as to the second factor of the risk of retaliation, Plaintiffs suggest that opt-in plaintiffs may still wish to use Defendants as references for future jobs. (Plfs.' Opp'n at 23.) Plaintiffs provide no evidence, such as a declaration, in support of such speculation. *Contrast with Garrido*, 241 Cal. App. 4th at 846 (plaintiff provided declaration stating that had he known his statutory rights were being violated, he would not have been willing to bring suit because of fear of retaliation, as his employer frequently made its employees feel as if their jobs were in jeopardy). Such generalized statements lacking supporting evidence do not satisfy the *Gentry* test.

The Court therefore concludes that *Gentry* does not require that the Court invalidate the class arbitration agreement.

### iv.   Ability to Compel Arbitration as to Open Door, Farris, and Clark

Finally, Plaintiffs argue that the 2020 MAA cannot be used to compel arbitration of the claims against Defendants Open Door, Farris, and Clark, as they are nonsignatories to the agreement. (Plfs.' Opp'n at 24.) Defendants, in turn, point to *Garcia v. Pexco, LLC*, where the Court of Appeal found that a nonsignatory could compel arbitration when the nonsignatory defendant was alleged to be a joint employer with the signatory defendant. 11 Cal. App. 5th 782, 788 (2017). The Court of Appeal explained that while the general rule is that "one must be a party to an arbitration agreement to be bound by it or invoke it," exceptions to the general rule existed. *Id.* at 785-86 (internal quotation omitted). One such exception was equitable estoppel, under which "a non-signatory defendant may invoke an arbitration clause to compel a signatory plaintiff

18

to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Id.* at 786 (internal quotation omitted). Such an in intimate and intertwined relationship existed where the plaintiff's claims against the nonsignatory defendant were rooted in his employment relationship with the signatory defendant, and the plaintiff had failed to distinguish between the two defendants in any way. *Id.* at 787-88. Instead, all of the claims against the nonsignatory defendant were based on the same facts alleged against the signatory defendant, and the plaintiff alleged that the two were joint employers. *Id.* at 788.

*Garcia*, however, is distinguishable from the instant case because there, the plaintiffs alleged that the two defendants were joint employers based on an employment relationship governed by an arbitration agreement.  In contrast, here Plaintiffs do not allege a joint employment relationship until *after* workers were required to enter into a new contract with Open Door.  (FAC ¶ 20 ("during the period from October 2014 to the present, 20/20 is liable as a joint employer of Class Members, along with [Open Door] and Individual Defendants . . . .").  Prior to that point, when workers were bound by the 2020 MAA, there are no allegations of joint employment, nor could there be as Open Door was not established until October 2014 in order to contract directly with workers.  (FAC ¶ 18.)  Unlike in *Garcia*, Defendant Open Door's liability in this case did not arise from the opt-in Plaintiffs' worker relationship with Defendant 2020 under the 2020 MAA, but under a new contract with no arbitration clause.  In other words, there are two contracts in this case, while there was only a single contract that allegedly created liability in *Garcia*; the facts underlying the claims against Defendant 2020 versus the remaining Defendants are therefore different, as they concern different contracts and different work relationships.  Thus, the Court concludes that here, *Garcia* does not apply to the claims against Defendant Open Door.[8]

Plaintiffs do, however, allege that during the pendency of the 2020 MAA, Defendants 2020 and individual Defendants had an employment relationship with class members, alleging the

---

[8] *Garcia* would appear to apply, however, if Defendant 2020 sought to seek to compel arbitration under the Open Door arbitration agreement, as the claims against both defendants would then be based on the same facts and allegations of a joint employer relationship.

19

United States District Court
Northern District of California

1   same facts against both Defendants 2020 and the individual Defendants.  (FAC ¶¶ 17a-i.)

2   Moreover, the 2020 MAA itself states that workers agree to arbitrating their claims against

3   Defendant 2020 as well as Defendant 2020's "subsidiaries, affiliates, directors, employees, or

4   agents," which would include individual Defendants, as both were employed by Defendant 2020

5   during the pendency of the 2020 MAA.  Thus, to the extent opt-in Plaintiffs' claims against

6   individual Defendants are based on actions prior to contracting with Defendant Open Door, those

7   claims must be submitted to arbitration.  After contracting with Defendant Open Door, however,

8   opt-in Plaintiffs' claims are based on a new contract that does not include an arbitration agreement,

9   and new facts regarding the employment relationship between opt-in Plaintiffs and individual

10  Defendants.

11                          **IV.    CONCLUSION**

12        For the reasons stated above, the Court GRANTS Defendants Open Door's, Farris's, and

13  Clark's motion to join Defendant 2020's motion to compel arbitration, and STAYS Defendant

14  2020's motion to compel arbitration, pending the Supreme Court's decision in the *Morris* appeal.

15  The Court finds, however, that Plaintiffs have failed to establish waiver, and that *Gentry* does not

16  invalidate the arbitration agreement.  The Court also concludes that assuming that the motion to

17  compel arbitration is granted, the 2020 MAA cannot be enforced as to Defendant Open Door, but

18  that it may be enforced against Defendants Farris and Clark for actions prior to opt-in Plaintiffs

19  contracting directly with Defendant Open Door in October 2014, at which point a new

20  employment relationship began based on different facts and a different contract.

21        The parties are directed to inform the Court in a joint status update once the Supreme

22  Court issues a ruling on the *Morris* appeal.  At that point, the Court will issue a ruling on the

23  outstanding question of whether the arbitration agreement is invalid per *Morris* and the NLRA,

24  and determine whether arbitration can be compelled.[9]  In the meantime, the Court will stay the

25  case with respect to the five opt-in Plaintiffs, as well as any other opt-in Plaintiffs who have

26

27  _____

    [9] The Court will **not** entertain new arguments on the issues decided in this order, unless the parties
28  satisfy the requirements of Civil Local Rule 7-9 for motions for reconsideration.

signed an arbitration agreement, and would be subject to a motion to compel arbitration.[10]  The

Court also sets a case management conference for **December 5, 2017** at **1:30 p.m**.  The case

management conference statement is due by November 28, 2017.

IT IS SO ORDERED.

Dated: November 8, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

[10] At the hearing, the Court asked the parties how they wished to proceed with the claims of the five opt-in Plaintiffs.  Defendant 2020 suggested staying the case as to anyone subject to an arbitration agreement, which Plaintiffs did not object to.

21